BURRIS, APPELLANT, *v.* GRANGE MUTUAL COMPANIES ET AL., APPELLEES.
BURRIS, APPELLANT, *v.* POLLACK, APPELLEE.
BURRIS, APPELLANT, *v.* ESTATE OF BURRIS ET AL., APPELLEES.

[Cite as Burris *v.* Grange Mut. Cos. (1989), 46 Ohio St. 3d 84.]

(No. 88-1036—Submitted April 27, 1989—Decided October 18, 1989.)

*Murray & Murray Co., L.P.A.,* and *James T. Murray,* for appellant.

*White & White* and *Phillip M. White, Jr.,* for appellee Sanford J. Burris, Jr., Admr.

*Buckingham, Holzapfel, Zeiher, Waldock & Schell Co., L.P.A.,* and *M. L. McDermond, Jr.,* for appellees Grange Mutual Companies and Annette Pollack.

STEPHENSON, J. Appellant urges in her first proposition of law that the Grange policy should be interpreted to provide $300,000 of liability coverage. The policy's declarations page provides liability coverage for bodily injury in the amount of "100,000 EA. PERSON," and "300,000 EA. OCCURRENCE."

Under "Part 1-LIABILITY" the policy reads, in part, as follows:

"**Coverage A—Bodily Injury Liability and Property Damage Liability:** To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of:

"A. bodily injury, sickness or disease, including death resulting therefrom, hereinafter called 'bodily injury,' sustained by any person;

"* * *

"arising out of the ownership, maintenance or use of the owned automobile or any non-owned automobile * * *.

"* * *

"**Limits of Liability:** The limit of bodily injury liability stated in the declarations as applicable to 'each person' is the limit of the company's liability for all damages, including damages for care and loss of services, arising out of bodily injury sustained by one person as the result of any one occurrence; the limit of such liability stated in the declarations as applicable to 'each occurrence' is, subject to the above provision respecting each person, the total limit of the company's liability for all such damages arising out of bodily injury sustained by two or more persons as the result of any one occurrence."

Alternative arguments are advanced in support of the interpretation of the policy as urged by appellant. Principal reliance is placed upon *Wood* v. *Shepard* (1988), 38 Ohio St. 3d 86, 526 N.E. 2d 1089, the syllabus of which reads as follows:

"Each person entitled to recover damages pursuant to R.C. 2125.02 for wrongful death, and who is an insured under an underinsured motorist provision in an insurance policy, has a separate claim and such separate claims may not be made subject to the single person limit of liability in the underinsured motorist provision. (R.C. 2125.02 and 3937.18[A][2], construed and applied.)"

Appellant argues that since she is within the class of beneficiaries enumerated in R.C. 2125.02(A)(1), as are Sanford J. Burris, Jr. and the siblings, each has a claim of recovery under *Wood, supra,* and the $300,000 per occurrence limitation rather than $100,000 each person limitation applies.[2] It is claimed that any other in-

---

[2] In the case *sub judice,* there was only $225,000 available because Grange had already paid $75,000 for the death of Annette Pollack's brother who was also killed in the accident.

terpretation would create an anomaly, in that such limitation would be inapplicable with respect to uninsured motorist coverage but valid under a general liability policy. It is then argued that it is manifestly unfair to require uninsured and underinsured insurance policies to provide greater coverage than general liability policies.

The purported anomaly is illusory. It is manifest that the *Wood* holding as to the invalidity of such policy provisions rests upon the duty of an insurer to provide coverage pursuant to R.C. 3937.18 and any attempts, without statutory authorization, to limit such coverage frustrate the purpose of R.C. 3937.18.[3] Appellant points to no similar statute which precludes such single person limitations in a general liability insurance policy.

A second distinction is that there is no privity of contract between a tort claimant and the insurer of a tortfeasor. In uninsured motorist policies, the insured has paid a premium and the insurer has agreed to assume the risk, and provides coverage pursuant to the mandates of R.C. 3937.18. That *Wood* is limited to the uninsured motorist policy provisions is made manifest by the following language in *Wood, supra,* at 91, 526 N.E. 2d at 1093:

"* * * It is contended that the wrongful death statute, and specifically R.C. 2125.02, could be used, under today's decision, to permit recovery by persons who are not in any way contractually in privity with an underinsured carrier. This, of course, is not the case. Only an *insured* under the underinsured motorist provision can recover under the policy for injury or wrongful death. Appellee, herein, does not dispute that James, Jessica and Carrie Wood are all covered persons under the policy." (Emphasis *sic.*)

In short, *Wood* is distinguishable and inapplicable in the case *sub judice* and provides no basis for invalidation

---

[3] R.C. 3937.18 reads, in pertinent part, as follows:

"(A) No automobile liability or motor vehicle liability policy of insurance insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance, or use of a motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless both of the following are provided:

"(1) Uninsured motorist coverage, which shall be in an amount of coverage equivalent to the automobile liability or motor vehicle liability coverage and shall provide protection for bodily injury or death under provisions approved by the superintendent of insurance, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness, or disease, including death, resulting therefrom;

"(2) Underinsured motorist coverage, which shall be in an amount of coverage equivalent to the automobile liability or motor vehicle liability coverage and shall provide protection for an insured against loss for bodily injury, sickness, or disease, including death, where the limits of coverage available for payment to the insured under all bodily injury liability bonds and insurance policies covering persons liable to the insured are less than the limits for the insured's uninsured motorist coverage at the time of the accident. The limits of liability for an insurer providing underinsured motorist coverage shall be the limits of such coverage, less those amounts actually recovered under all applicable bodily injury liability bonds and insurance policies covering persons liable to the insured."

of the per-person policy limitation as urged by appellant.

Appellant's two additional arguments as to why the $100,000 per-person limitation does not apply must be considered in light of established rules of interpretation of insurance contracts. The fundamental goal in insurance policy interpretation is to ascertain the intent of the parties from a reading of the contract in its entirety, and to settle upon a reasonable interpretation of any disputed terms in a manner calculated to give the agreement its intended effect. " 'The meaning of a contract is to be gathered from a consideration of all its parts, and no provision is to be wholly disregarded as inconsistent with other provisions unless no other reasonable construction is possible.' " *Karabin* v. *State Auto. Mut. Ins. Co.* (1984), 10 Ohio St. 3d 163, 167, 10 OBR 497, 500, 462 N.E. 2d 403, 406, quoting *German Fire Ins. Co.* v. *Roost* (1897), 55 Ohio St. 581, paragraph one of the syllabus; accord *Gomolka* v. *State Auto. Mut. Ins. Co.* (1982), 70 Ohio St. 2d 166, 24 O.O. 3d 274, 436 N.E. 2d 1347; *Dealers Dairy Products Co.* v. *Royal Ins. Co.* (1960), 170 Ohio St. 336, 10 O.O. 2d 424, 104 N.E. 2d 745.

The words in a policy must be given their plain and ordinary meaning, and only where a contract of insurance is ambiguous and therefore susceptible to more than one meaning must the policy language be liberally construed in favor of the claimant who seeks coverage. *Dairyland Ins. Co.* v. *Finch* (1987), 32 Ohio St. 3d 360, 362, 513 N.E. 2d 1324, 1327; *Faruque* v. *Provident Life & Acc. Ins. Co.* (1987), 31 Ohio St. 3d 34, 31 OBR 83, 508 N.E. 2d 949. Nevertheless, it is axiomatic that the general rule of liberal construction cannot be employed to create an ambiguity where there is none.

*Karabin, supra,* at 166-167, 462 N.E. 2d at 406.

In light of the above rules of interpretation of insurance policies, we consider appellant's two additional arguments as to why the $300,000 per-occurrence limitation was applicable. First, appellant argues that irrespective of the applicability of *Wood* v. *Shepard, supra,* the "Limits of Liability" provision in the policy allows separate coverage for each person who sustains "damages" arising out of a "bodily injury." Second, appellant argues that even if the "Limits of Liability" allow separate coverage only for a person sustaining a "bodily injury," she did in fact sustain a "bodily injury." We find no merit to either of appellant's arguments.

As to the former argument, appellant refers to the "Limits of Liability" provision which reads, in pertinent part, as follows:

"[T]he limit of such liability stated in the declarations as applicable to 'each occurrence' is, subject to the above provision respecting each person, the total limit of the company's liability for all such damages arising out of bodily injury sustained by two or more persons as the result of any one occurrence."

Appellant first correctly characterizes her son's death as a "bodily injury" fitting within the definition of the policy. Appellant then argues that it is not the number of persons who sustain a bodily injury which controls the number of allowable claims, but instead the number of persons who suffer damage as a result of a "bodily injury." In essence, appellant argues that the phrase "sustained by two or more persons" modifies "damages" rather than modifying "bodily injury." We disagree.

The per-person and per-occurrence policy provisions herein being con-

sidered are widely used in automobile liability insurance policies. 8 Blashfield, Automobile Law and Practice (3 Ed. Rev. 1987) 248, Section 323.9. Consequently, the interpretation of such language has been frequently litigated. The courts, almost uniformly, have held that the per-person limitation involving bodily injury to one person applies if only one person is injured or killed in the accident even though other persons assert claims for consequential damages based upon the injury or death of the one person in the accident.

In a frequently cited Ohio case on this subject, the court in *Klein* v. *Employers Liability Assur. Corp.* (1918), 9 Ohio App. 241, 29 Ohio C.C. (N.S.) 175, syllabus, held as follows:

"Where a policy of insurance indemnified the assured against loss from liability imposed by law for damages on account of bodily injuries accidentally suffered by any person or persons by means of the maintenance or use of a certain automobile, and the company's liability was limited to five thousand dollars for an accident resulting in such injuries to one person, the word 'such' injuries refers only to bodily injuries, and the indemnity is limited in the case of injuries to one person to five thousand dollars, no matter how many may recover because of such injuries."

Likewise, in *Valdez* v. *Interinsurance Exchange of the Auto. Club of So. Cal.* (1966), 246 Cal. App. 2d 1, 54 Cal. Rptr. 906, the court stated that under an automobile liability insurance policy providing a $10,000 limit on coverage for all damages arising out of bodily injury sustained by one person, the term "one person" referred to the person injured or killed and not to others who may have sustained damages as the result of the injury or death.

More recently, when faced with insurance policy provisions similar to those in the case at bar, the Kentucky Supreme Court, in *Moore* v. *State Farm Mut. Ins. Co.* (Ky. 1986), 710 S.W. 2d 225, stated as follows:

"Furthermore, we adopt the view of a legal commentary which states:

" 'Under policies fixing a maximum recovery for "bodily" injury to one person, * * * the limitation [is] applicable to all claims of damage flowing from such bodily injury, and * * * therefore it is immaterial that some part of the damages may be claimed by a person other than the one suffering the bodily injuries. In other words, all damage claims, direct and consequential, resulting from injury to one person, are subject to the limitation.' 13 ALR 3d 1228, 1234."

See, also, *New Amsterdam Cas. Co.* v. *Hart* (1943), 153 Fla. 840, 16 So. 2d 118; *Hutton* v. *Martin* (1953), 43 Wash. 2d 574, 262 P. 2d 202; *Cradoct* v. *Employers Cas. Co.* (Tex. App. 1987), 733 S.W. 2d 301, which reach similar conclusions.

In *Bernat* v. *Socke* (1955), 180 Pa. Super. 512, 515-516, 118 A. 2d 253, 254, cited with approval by the Pennsylvania Supreme Court in *Smith* v. *Cassida* (1961), 403 Pa. 404, 169 A. 2d 539, the Pennsylvania Superior Court addressed the precise argument advanced by appellant in the case *sub judice*—i.e., the phrase "sustained by two or more persons" modifies "damages"—with respect to a virtually identical insurance contract by stating the following:

"It is contended that the above quoted limits of liability clause is ambiguous and therefore should be construed against the insurance company which drafted the policy. Plaintiff would have the court construe the words.

" 'The limit of the bodily injury

liability stated in the declarations as applicable to "each person" is the limit of the company's liability for all damages, including damages for care and loss of services, arising out of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by one person in any one accident' to mean that the phrase 'sustained by one person in any one accident' modifies the word damages. By such a construction husband plaintiff would recover because he had damages distinct from those of the wife, although they originated from [his] wife's injuries. However, the court below properly held that the disputed phrase modifies the words 'bodily injury, sickness or disease'. Since only the wife was injured, the limit for all damages resulting therefrom is $5,000. We see no ambiguity in this policy. The construction adopted by the court below is more logical and grammatical, since plaintiff's contention would result in the phrase 'sustained by one person' modifying a word far removed in the sentence. Further, the results obtainable under such construction of the policy could be most inequitable, as, for example, where two persons are killed in one accident, but only one beneficiary or heir exists, there would be only one person sustaining damages and the liability would be limited to $5,000. Similar phraseology of this policy has been construed by many courts outside Pennsylvania, and the construction urged by the garnishee has been widely upheld. * * *"

We conclude from the above that there is no ambiguity in the Grange policy and the only logical interpretation is that the number of persons sustaining bodily injury as a result of the accident controls the amount of coverage provided by the policy. Thus, the number of persons sustaining consequential damages is irrelevant for the purpose of determining the amount of coverage available.

The second argument is based on appellant's claim that she did sustain "bodily injury." The Grange policy provides coverage "[t]o pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages * * *." Inasmuch as we conclude (*infra*) that appellant has not set forth a claim for negligent infliction of emotional distress, we reject appellant's second argument that, because she claims to have suffered a "bodily injury" upon being informed of the death of her son, the policy should be construed to provide coverage for such injury.

It follows that since the tortfeasor was not liable to appellant for such "bodily injury," her recovery was limited to that of a wrongful death beneficiary for any compensatory damages therein allowed by the General Assembly in R.C. 2125.02(B) including, in subsection (5), "[t]he mental anguish incurred by the * * * parents * * *" in a wrongful death action brought by the personal representative of the deceased.

Under appellant's second proposition of law, she asserts that the court of appeals erred in upholding the trial court's judgment dismissing her negligent-infliction-of-emotional-distress claim. The court of appeals held that because she was not "closely enough connected to the circumstances [which resulted in her son's death] to be considered a bystander," appellant did not fit within the scope of *Paugh* v. *Hanks* (1983), 6 Ohio St. 3d 72, 6 OBR 114, 451 N.E. 2d 759. Appellant contends that a complaint which states with specificity that serious physical and emotional injury was negligently inflicted is sufficient as a matter of law to withstand a motion to dismiss.

The original rule in Ohio was that no recovery for negligent infliction of emotional distress was possible unless there was a contemporaneous physical injury. *Miller* v. *Baltimore & Ohio S.W. RR. Co.* (1908), 78 Ohio St. 309, 85 N.E. 499. This court, in 1983, specifically rejected the reasoning of *Miller* in *Schultz* v. *Barberton Glass Co.* (1983), 4 Ohio St. 3d 131, 4 OBR 376, 447 N.E. 2d 109. After the *Schultz* decision, even in the absence of a contemporaneous physical injury, a plaintiff may recover damages for the negligent infliction of serious emotional distress.

In *Paugh, supra,* the law concerning emotional distress was further expanded. This court therein rejected the "zone of danger" rule, which would allow recovery in the absence of physical injury only if the plaintiff was close enough to an accident to have been placed in actual physical danger, as being unduly restrictive. Instead, the essential issue in whether recovery is allowed is the reasonable foreseeability of the injury. This court held that a bystander to an accident may recover if the emotional injuries were both serious and reasonably foreseeable.

This court in *Paugh* cited favorably the decision of the California Supreme Court in *Dillon* v. *Legg* (1968), 68 Cal. 2d 728, 69 Cal. Rptr. 72, 441 P. 2d 912, which applied the general rules of tort law, including foreseeability, instead of the "zone of danger" rule. This court set forth the following factors, developed in *Dillon,* to be considered, although they are not determinative, on the issue of foreseeability:

"(1) [W]hether the plaintiff was located near the scene of the accident, as contrasted with one who was a distance away; (2) whether the shock resulted from a direct emotional impact upon the plaintiff from sensory and contemporaneous observance of the accident, as contrasted with learning of the accident from others after its occurrence; and, (3) whether the plaintiff and victim (if any) were closely related, as contrasted with an absence of any relationship or the presence of only a distant relationship.

"'* * *

"'In light of these factors the court will determine whether the accident and harm was [*sic*] reasonably foreseeable. Such reasonable foreseeability * * * contemplates that courts, on a case-to-case basis, analyzing all the circumstances, will decide what the ordinary man under such circumstances should reasonably have foreseen. The courts thus mark out the areas of liability, excluding the remote and unexpected.'" (Emphasis *sic*.) *Paugh, supra,* at 79, 6 OBR at 120, 451 N.E. 2d at 766 (quoting *Dillon* at 741, 69 Cal. Rptr. at 81, 441 P. 2d at 921).

In applying the above rules to the instant case, appellant asserts that she did aver sufficient facts in her complaint to withstand a Civ. R. 12(B)(6) motion—*i.e.,* her son was negligently killed and, when she was informed of the death, she suffered serious emotional distress. The crux of appellant's argument is that *Paugh* does not restrict recovery to those actually present at the accident scene.

Appellant relies on a portion of one sentence in *Paugh, supra,* at 79, 6 OBR at 120, 451 N.E. 2d at 766, which stated, "we believe that it is not necessary for a plaintiff to actually see the accident." Appellant takes that language out of context. The sentence directly following the portion of the one quoted by appellant states: "Thus, for example, a contemporaneous observance of the accident through the sense of hearing will enhance the likelihood that the emotional injury was reasonably foreseeable."

The language in *Paugh* is clear.

The only logical definition of "bystander" is "one who is at the scene." "Bystander" does not include a person who was nowhere near the accident scene and had no sensory perception of the events surrounding the accident. This court reiterated this point in *Binns* v. *Fredendall* (1987), 32 Ohio St. 3d 244, 245, 513 N.E. 2d 278, 280, by stating: "In *Paugh* we extended this new cause of action [*i.e.*, negligent infliction of serious emotional distress without contemporaneous injury] to persons *who observe an accident as bystanders* but who are not directly involved in the accident." (Emphasis added.) Thus, this court clearly required some type of sensory perception of the accident or events following immediately thereafter.

This holding is consistent with those of other jurisdictions which have adopted the *Dillon* approach. In *Corso* v. *Merrill* (1979), 119 N.H. 647, 656, 406 A. 2d 300, 306, the court held: "The emotional injury must be directly attributable to the emotional impact of the plaintiff's observation or contemporaneous sensory perception of the accident and immediate viewing of the accident victim. Therefore, recovery will not be permitted for emotional distress when the plaintiff is merely informed of the matter after the accident * * *." Likewise, in *Keck* v. *Jackson* (1979), 122 Ariz. 114, 116, 593 P. 2d 668, 670, the court stated: "Moreover, the emotional distress must result from witnessing an injury to a person with whom the plaintiff has a close personal relationship * * *." See, also, *Krousse* v. *Graham* (1977), 19 Cal. 3d 59, 137 Cal. Rptr. 863, 562 P. 2d 1022; *State* v. *Eaton* (Nev. 1985), 710 P. 2d 1370.

There have been several cases which allowed recovery where the plaintiff did not witness the accident itself. However, these cases are based upon the fact that the plaintiff arrived at the accident scene shortly after the accident. In *Tommy's Elbow Room, Inc.* v. *Kavorkian* (Alaska 1986), 727 P. 2d 1038, the court allowed recovery where the plaintiff arrived at the accident scene in time to observe police and medical technicians attempting to remove plaintiff's daughter from the smashed car. The court in *Archibald* v. *Braverman* (1969), 275 Cal. App. 2d 253, 256, 79 Cal. Rptr. 723, 725, held: "Manifestly, the shock of seeing a child severely injured immediately after the tortious event may be just as profound as that experienced in witnessing the accident itself."

The rationale for extension of the right of recovery to bystanders is based upon the existence of reasonable foreseeability that emotional and physical injuries may be incurred by bystanders from the tortfeasor's negligence and, therefore, a duty of ordinary care to bystanders arises. However, we conclude it is not reasonably foreseeable that one who is simply informed of the death of another and has not suffered the traumatic shock of perceiving the accident in some form would also suffer the emotional distress contemplated by *Paugh, supra,* at 78, 6 OBR at 119, 451 N.E. 2d at 765, such as "traumatically induced neurosis, psychosis, chronic depression, or phobia." As to such persons, there being no reasonable foreseeability of emotional distress contemplated by *Paugh, supra,* we hold no duty to such persons exists as a matter of law. To expand *Paugh,* as appellant argues, would without question begin "a first excursion into the 'fantastic realm of infinite liability' " so ominously predicted by Justice Burke's dissent in *Dillon, supra,* at 749, 69 Cal. Rptr. at 86, 441 P. 2d at 926, quoting *Amaya* v. *Home Ice, Fuel & Supply Co.* (1963), 59 Cal. 2d 295, 315, 29 Cal.

Rptr. 33, 45, 379 P. 2d 513, 525. Appellant's second proposition of law is overruled.

In her third proposition of law, appellant asserts that her declaratory judgment action was improperly dismissed. R.C. 2721.03 allows any person interested under a written contract to have any question of construction of the contract determined and to obtain a declaration of rights thereunder. Appellant argues that she was an interested party under the insurance contract and, as such, had standing to file a declaratory judgment action. Appellant further asserts that the probate court had no jurisdiction to interpret the insurance contract. Assuming, *arguendo,* appellant did have standing, we are not persuaded that the court of common pleas erred in dismissing her declaratory judgment action.

R.C. 2125.02(C) confers upon the probate court jurisdiction to approve a settlement offer with respect to a wrongful death claim. In the case *sub judice,* the administrator had submitted a proposed $90,000 settlement to the probate court. Appellant argues that while the probate court had jurisdiction to approve the settlement offer, it could not interpret an *inter vivos* contract—*i.e.,* the Grange policy—in reaching the determination to approve the settlement.

In support of her argument, appellant cites *In re Estate of Martin* (1962), 115 Ohio App. 515, 21 O.O. 2d 166, 185 N.E. 2d 785, wherein the Court of Appeals for Fayette County held that the probate court had no authority to determine the validity of an *inter vivos* contract among the heirs of an estate in probate after the probate court had determined the contract was irrelevant to the administration of the estate. However, the case *sub judice* is clearly distinguishable.

Among the enumerated powers of the probate court codified in the Revised Code is that set forth in R.C. 2101.24(C), which reads as follows:

"The probate court has plenary power at law and in equity to dispose fully of any matter that is properly before the court, unless the power is expressly otherwise limited or denied by statute."

As noted above, consideration of the proposed settlement was properly before the probate court. In its determination of whether the settlement offer was fair and equitable, it was necessary for the court to consider various factors, including how much insurance coverage was available. To accomplish that purpose, the probate court, as part of its plenary powers, could interpret the terms of the insurance policy for the limited purpose of determining the coverage available to satisfy the wrongful death claim.

When appellant brought her declaratory judgment action in the court of common pleas, the issue she sought to litigate—*i.e.,* the amount of coverage—was already before the probate court. Generally, "[a]s between courts of concurrent jurisdiction, the one whose power is first invoked by the institution of proper proceedings acquires jurisdiction, to the exclusion of all other tribunals, to adjudicate upon the whole issue and to settle the rights of the parties." *John Weenink & Sons Co.* v. *Court of Common Pleas of Cuyahoga Cty.* (1948), 150 Ohio St. 349, 38 O.O. 189, 82 N.E. 2d 730, paragraph two of the syllabus; *State, ex rel. Phillips,* v. *Polcar* (1977), 50 Ohio St. 2d 279, 4 O.O. 3d 445, 364 N.E. 2d 33; *State, ex rel. Judson,* v. *Spahr* (1987), 33 Ohio St. 3d 111, 515 N.E. 2d 911. Because there is nothing in the record before us which would indicate some reason for not applying the above rule of law, we hold the declaratory judg-

ment action was properly dismissed. In any event, even if the common pleas court should have granted declaratory judgment relief, the failure to do so was harmless error since only the policy limitation of $100,000 applies for the reasons earlier set forth.

In her final proposition of law, appellant asserts the probate court erred in refusing to remove Sanford Burris, Jr. as the administrator of the estate. The court of appeals noted that no notice of appeal was filed from the judgment overruling appellant's motion to remove the administrator. The notice of appeal filed concerned only the judgment approving the $90,000 settlement offer. For that reason, the court of appeals found it was without jurisdiction to consider the merits of the asserted error. Likewise, we as well are without jurisdiction to consider the merits of appellant's final proposition of law.

For the foregoing reasons, the judgment of the court of appeals is affirmed.

*Judgment affirmed.*

MOYER, C.J., HOLMES and WRIGHT, JJ., concur.

H. BROWN, J., concurs in judgment only.

SWEENEY and DOUGLAS, JJ., dissent.

EARL E. STEPHENSON, J., of the Fourth Appellate District, sitting for RESNICK, J.

SWEENEY, J., dissenting. Since I believe that our prior decision in *Wood v. Shepard* (1988), 38 Ohio St. 3d 86, 526 N.E. 2d 1089, should be logically extended and applied to the instant cause, I must respectfully dissent from the majority opinion herein.

In *Wood, supra,* this court essen-

tially held that the wrongful death statute (R.C. 2125.02) presumes that certain survivors suffer damage as a result of the wrongful death, and that a contract of insurance cannot reduce the number of separate claims that may be pursued in an underinsured motorist claim. While the instant cause deals with liability insurance coverage of a tortfeasor, I feel that the rationale of *Wood, supra,* should apply here because in *Wood* it was the wrongful death statute that created the individual claims, not the underinsured motorist statute. Since the wrongful death statute applies uniformly to both liability insurance claims and underinsured motorist claims, this court should be consistent and follow the decision in *Wood, supra,* by finding separate-claim status for each survivor. The contractual restrictions in a liability policy should not be allowed to restrict the number of claims that can be statutorily made with regard to a wrongful death because such restrictions unduly shift the loss from the tortfeasor's liability carrier to the victim's underinsured motorist carrier. For these reasons, I would reverse the decision of the court of appeals and apply the rationale of *Wood, supra,* to liability insurance claims arising out of wrongful death.

Likewise, I would also reverse the dismissal of appellant's claim for negligent infliction of emotional distress. In my view, the issue of whether appellant's emotional injuries were reasonably foreseeable under *Paugh* v. *Hanks* (1983), 6 Ohio St. 3d 72, 6 OBR 114, 451 N.E. 2d 759, is better left for jury determination, inasmuch as appellant has sufficiently alleged such cause of action on the face of her well-pleaded complaint.

DOUGLAS, J., concurs in the foregoing dissenting opinion.