KATZ ET AL., APPELLEES, *v.* OHIO INSURANCE
GUARANTY ASSOCIATION, APPELLANT.

[Cite as *Katz v. Ohio Ins. Guar. Assn.*,
103 Ohio St.3d 4, 2004-Ohio-4109.]

(No. 2003–0028—Submitted November 19, 2003—Decided August 18, 2004.)

**MOYER, C.J.**

{¶ 1} Dr. Gordon Katz, appellee, is a licensed doctor of osteopathy. He was insured under medical professional liability policies issued by P.I.E. Mutual Insurance Company ("P.I.E.") for the period July 1, 1993, through July 1, 1995. The primary policy provided liability coverage of up to $200,000 per claim with a $600,000 aggregate limit. P.I.E. had also issued an excess insurance policy to Katz that provided an additional $1 million per claim with an aggregate limit for all claims of $1 million.

{¶ 2} In 1995, Katz notified P.I.E. that claims arising out of the treatment of Teri Sue Robinson had been made against him. In 1996, Susan Robinson ("Robinson"), appellee, filed an action in her capacity as administrator of Teri's estate, alleging that Katz negligently rendered medical care to Teri. Robinson included a survival claim to recover for Teri's medical expenses and pain and suffering. Robinson also asserted a wrongful death claim on behalf of three individuals: Teri's mother, father, and brother.

{¶ 3} P.I.E. thereafter became insolvent. The parties agree that P.I.E.'s obligations to Katz in regard to Robinson's claims are subject to the Ohio Insurance Guaranty Association Act, R.C. Chapter 3955 ("the Act").

{¶ 4} The Act created the Ohio Insurance Guaranty Association ("OIGA"), appellant herein, a nonprofit, unincorporated association. R.C. 3955.06(A). OIGA collects funds from member insurers and administers those funds to protect insureds and third-party claimants from certain losses resulting from the insolvency of its members. R.C. 3955.08(A)(3). Pursuant to R.C. 3955.01(D)(2)(b) and 3955.08(A)(1), OIGA is responsible for paying "covered claims" up to a statutory limit of $300,000.

{¶ 5} The cause before us is a declaratory judgment action filed by Katz pursuant to R.C. Chapter 2721. Katz named OIGA and sought a declaration of OIGA's limits of responsibility under the Act. Katz alleged that a real and actual controversy exists as to how many covered claims have been in fact asserted against Katz: one survival claim and additionally one claim for each of Teri's relatives entitled to recover under the wrongful-death statute, per policy, or only one combined claim statutorily capped at $300,000.

{¶ 6} Robinson intervened as a party plaintiff in the action. Each of the parties filed a motion for summary judgment. Katz and Robinson contended that there are at least four separate claims covered under each of the P.I.E. policies: the survival claim and claims on behalf of the decedent's relatives, including her mother, father, and brother. OIGA asserted that its exposure was limited to one payment of $300,000.

{¶ 7} The primary policy included the following provision:

{¶ 8} "V—LIMITS OF LIABILITY

{¶ 9} "The Limits of Liability of The Company are as follows:

{¶ 10} "A. AS TO EACH CLAIM

{¶ 11} "The Limit of Liability stated in the General Declarations, as applicable to 'each claim,' is the limit of The Company's liability for all damages because of any one claim or suit or all claims or suits first made during the policy period because of injury to or death of any one person * * *." (Boldface sic.)

{¶ 12} Katz conceded that this provision "might *arguably* limit coverage to a single limit for all claims arising out of one occurrence" (emphasis added) but contended that the provision was nevertheless unenforceable pursuant to *Savoie v. Grange Mut. Ins. Co.* (1993), 67 Ohio St.3d 500, 620 N.E.2d 809. Similarly, in support of her motion for summary judgment, appellee Robinson asserted that *Savoie* controls to invalidate this provision.

{¶ 13} The trial court entered summary judgment, recognizing four separate claims against the primary policy. It found that the primary policy provided coverage of up to $200,000 for each of those claims, with a total aggregate limit of $600,000. It declared OIGA liable to the same extent. The trial court grounded its decision in *Savoie,* which held, "Liability policy provisions which purport to consolidate wrongful death damages suffered by individuals into one 'each person' policy limit are unenforceable." Id., paragraph one of the syllabus.

{¶ 14} In regard to the excess policy, the trial court held, "[I]f any 'covered' claim under the primary policy exceeds $200,000, that claimant is entitled to an additional 'covered' claim under the excess policy up to $300,000 with a total aggregate amount of coverage available to plaintiffs under the excess policy of $1,000,000.00." In so holding, the court rejected OIGA's argument that it was

liable to pay only a single statutory maximum of $300,000, notwithstanding the existence of both a primary policy and an excess policy.

{¶ 15} The court of appeals affirmed the judgment of the trial court.

{¶ 16} We reverse the judgment of the court of appeals in part. We today limit the holding of the first paragraph of the syllabus of *Savoie* to cases presenting similar facts, i.e., cases involving claims against automobile insurance policies that contain "each person" limits. Accordingly, a medical doctor and a professional liability insurer may agree that the insurer's liability for all damages sustained from the death of one person is subject to the monetary limit declared for "each claim," irrespective of the number of wrongful-death claimants. Paragraph one of the *Savoie* syllabus does not apply to claims made against professional-liability insurance policies, whether those claims arose before or after October 20, 1994, the effective date of Am.Sub.S.B. No. 20.[1]

I

OIGA Coverage Limits Under the P.I.E. Primary Policy

{¶ 17} R.C. Chapter 3955 exists, in part, "to provide a mechanism for the payment of covered claims under certain insurance policies [and to] avoid excessive delay in payment and reduce financial loss to claimants or policyholders because of the insolvency of an insurer." R.C. 3955.03.

{¶ 18} R.C. 3955.08(A)(1) provides that OIGA shall be obligated to the extent of "covered claims" existing within certain time limits relative to a determination that an insurer has become insolvent. However, "[i]n no event shall the association be obligated to a policyholder or claimant in an amount in excess of the face amount of the policy from which the claim arises." Id. Moreover, OIGA is statutorily "deemed the insurer to the extent of its obligation on the covered claims and to such extent shall have all rights, duties, and obligations of the insolvent insurer as if the insurer had not become insolvent." R.C. 3955.08(A)(2). Accordingly, under no circumstances is OIGA liable in an amount exceeding the amount for which P.I.E. itself would have been contractually liable. We are thus

---

1.  {¶ a} Am.Sub.S.B. No. 20 added R.C. 3937.44, which provides:

{¶ b} "Any liability policy of insurance including, but not limited to, automobile liability or motor vehicle liability insurance that provides a limit of coverage for payment for damages for bodily injury, including death, sustained by any one person in any one accident, may, notwithstanding Chapter 2125. of the Revised Code, include terms and conditions to the effect that all claims resulting from or arising out of any one person's bodily injury, including death, shall collectively be subject to the limit of the policy applicable to bodily injury, including death, sustained by one person, and, for the purpose of such policy limit shall constitute a single claim. Any such policy limit shall be enforceable regardless of the number of insureds, claims made, vehicles or premiums

required to interpret the P.I.E. policy to determine the application of its limits of liability to the case at bar.

{¶ 19} OIGA argues that Section V(A) of the primary policy is a valid and enforceable contractual provision agreed to by both P.I.E. as insurer and Katz as insured. Katz and Robinson argue that *Savoie* applies to invalidate this provision.

{¶ 20} The first paragraph of the syllabus in *Savoie* states: "Each person who is presumed to have been damaged as a result of a wrongful death claim may, to the extent of his or her damages, collect from the tortfeasor's liability policy up to its per person limits subject to any per accident limit. Liability policy provisions which purport to consolidate wrongful death damages suffered by individuals into one 'each person' policy limit are unenforceable." *Savoie*, 67 Ohio St.3d 500, 620 N.E.2d 809, paragraph one of the syllabus. OIGA argues that this proposition of law does not apply to medical-malpractice liability policies. We agree.

{¶ 21} The facts of *Savoie* involved claims made pursuant to automobile liability policies. The first sentence of the majority opinion specifies that the case "raise[d] three questions of *automobile* insurance law." (Emphasis added.) Id. at 503, 620 N.E.2d 809. Each of the three remaining syllabus paragraphs of the *Savoie* decision specifically refers to uninsured/underinsured insurance, which exists exclusively in automobile liability policies. Every case cited in the syllabus of *Savoie* as being overruled, applied, followed, or limited [2] involved interpretation of an automobile insurance policy.

{¶ 22} Moreover, the first paragraph of the *Savoie* syllabus, upon which the appellees rely in contending that the consolidation clause in the P.I.E. policy is unenforceable, overrules *State Farm Auto. Ins. Co. v. Rose* (1991), 61 Ohio St.3d 528, 575 N.E.2d 459, and paragraphs one and two of the syllabus of *Burris v. Grange Mut. Cos.* (1989), 46 Ohio St.3d 84, 545 N.E.2d 83. Both *Rose* and the identified paragraphs in *Burris* establish law relative to *automobile* liability insurance provisions.

{¶ 23} We acknowledge that a surviving spouse, the children, and the parents of a decedent are "rebuttably presumed to have suffered damages" resulting from wrongful death. R.C. 2125.02(A)(1). However, it does not follow that a claim for damages, even though legally viable, is necessarily within the coverage of a liability policy procured by a tortfeasor. See *Savoie*, 67 Ohio St.3d at 516, 620

---

shown in the declarations or policy, or vehicles involved in the accident." 145 Ohio Laws, Part I, 204, 210.

2. *State Farm Auto. Ins. Co. v. Rose* (1991), 61 Ohio St.3d 528, 575 N.E.2d 459; *Burris v. Grange Mut. Cos.* (1989), 46 Ohio St.3d 84, 545 N.E.2d 83; *Wood v. Shepard* (1988), 38 Ohio St.3d 86, 526 N.E.2d 1089; *Hower v. Motorists Mut. Ins. Co.* (1992), 65 Ohio St.3d 442, 605 N.E.2d 15; *Karabin v. State Auto. Mut. Ins. Co.* (1984), 10 Ohio St.3d 163, 10 OBR 497, 462 N.E.2d 403; *Dues v. Hodge* (1988), 36 Ohio St.3d 46, 521 N.E.2d 789; *Hill v. Allstate Ins. Co.* (1990), 50 Ohio St.3d 243, 553 N.E.2d 658.

N.E.2d 809 (Moyer, C.J., dissenting) (Section 19a, Article I of the Ohio Constitution, providing that wrongful-death damages shall not be limited by law, does not mean that an insurer and an insured may not contract for limited levels of coverage). Even in the context of automobile insurance law, *Savoie* was an aberration in terms of construing provisions in liability policies, as opposed to uninsured and underinsured insurance provisions. Id.

{¶ 24} In short, we refuse to extend the rationale of the first paragraph of *Savoie* beyond the context of automobile insurance cases.

{¶ 25} In the case at bar, Katz purchased a primary policy with a limit of "$200,000 each claim" from P.I.E. OIGA contends that Section V(A) of that policy was clearly included to cover circumstances in which one act of malpractice may result in multiple damage claims, such as may occur in a wrongful-death action. Both Katz and Robinson have consistently argued that issues of interpretation of Section V(A) are irrelevant, in that the provision is nevertheless moot pursuant to *Savoie*. Our decision today that *Savoie* does not invalidate Section V(A) revives the relevance of the issue in view of our established precedent that ambiguous insurance provisions are construed in favor of the insured.

{¶ 26} In the case at bar, the Sixth District Court of Appeals determined that Section V(A) was a limits-of-liability provision. We agree insofar as the clause provides a monetary limit on P.I.E.'s obligation under the policy. We do not, however, believe that Section V(A) is a *consolidation* clause for purposes of counting how many "claims" exist under the policy. There simply is no language in the clause indicating that all claims recognized as lawful under the wrongful-death statute are consolidated into "one claim" under the policy. Section V(A) instead imposes a valid and enforceable $200,000 *limit of liability* on *all* claims resulting from the death of a single person, irrespective of the number of people recognized under law as having a wrongful-death claim. It provides that the $200,000 limit applicable to "each claim," as set forth in the declarations, caps P.I.E.'s exposure "for *all damages* because of * * * *all claims* * * * because of * * * death of any one person." (Emphasis added.) In short, there remain at least four claims under the P.I.E. policy. Each of those claims is a "covered claim" as defined in R.C. 3955.01(D)(1). But had P.I.E. remained solvent, it would have been liable up to only a total maximum of $200,000 for all of those claims pursuant to Section V(A). OIGA, per statute, is not obligated to pay more than that maximum.

II

OIGA Coverage Limits Under the P.I.E. Excess Policy

{¶ 27} R.C. 3955.01 defines "covered claim" as follows:

{¶ 28} "(D)(1) 'Covered claim' means an unpaid claim * * * which arises out of and is within the coverage of an insurance policy to which sections 3955.01 to 3955.19 of the Revised Code apply * * *.

{¶ 29} "(2) 'Covered claim' does not include any amount:

{¶ 30} "* * *

{¶ 31} "(b) In excess of three hundred thousand dollars on any claim."

{¶ 32} OIGA argues that it is irrelevant that Katz had procured two separate policies—one primary and one excess—in determining the statutory maximum of its indemnification liability. It argues that Katz "purchased medical malpractice liability insurance coverage that had been divided by the carrier between a primary insurance policy and an excess insurance policy." It further argues that the "fact that the insurance coverage is provided through two integrated policies, rather than through a single policy, was of absolutely no significance" and that it is liable up to only one $300,000 statutory limit.

{¶ 33} OIGA correctly asserts that the fact that there are two separate policies here does not affect the number of claims. It does, however, affect the amount of P.I.E.'s exposure under the two policies and thus also the extent to which OIGA's statutory maximum liability will be invoked. Contrary to OIGA's contention, however, the two policies cover not one claim, but four claims, as set forth in Section I of this opinion. Hence OIGA's maximum *statutory* exposure is $1.2 million, i.e., the statutory maximum of $300,000 per covered claim multiplied by four claimants.

{¶ 34} Robinson presented four covered claims in her action against Katz: three wrongful-death claims and a survival claim. As discussed previously, Section V(A) of the P.I.E. primary policy limits maximum recovery for all claims to $200,000 under that policy; contrary to OIGA's contentions, the policy did not consolidate the claims to one claim. Because OIGA steps into P.I.E.'s shoes, it, too, has a $200,000 exposure under the primary policy.

{¶ 35} Katz purchased an excess policy with a $1 million limit of liability per claim in addition to his primary policy. Had P.I.E. remained solvent, it would have been liable for excess coverage up to a limit of $1 million under the excess policy. We have recognized that OIGA "steps into the shoes of that insurer" when an insurer becomes insolvent, and it assumes all of the carrier's obligations except as otherwise provided in the Act. *Lake Hosp. Sys., Inc. v. Ohio Ins. Guar. Assn.* (1994), 69 Ohio St.3d 521, 523, 634 N.E.2d 611. The four claims Robinson made against Katz are subject not only to the coverage provided under the primary policy, but also to the additional coverage provided under the excess policy. To the extent that the claims arising from Katz's alleged malpractice exhaust the $200,000 coverage under the P.I.E. primary policy, those claims are

afforded additional coverage of up to $1 million under the excess policy. Because OIGA steps into the shoes of P.I.E., its exposure *under the P.I.E. excess policy* is $1 million. OIGA's maximum exposure *under the two policies* is thus $1.2 million.

{¶ 36} Pursuant to R.C. 3955.01(D)(2)(b), however, OIGA's exposure is limited to $300,000 per covered claim. Because four covered claims are presented in this action, OIGA's statutory exposure is $1.2 million. That this exposure is coextensive with P.I.E.'s exposure, had P.I.E. remained solvent, under the primary and excess policies combined is a mathematical coincidence.

### III

### Conclusion

{¶ 37} Section V(A) of the P.I.E. policy is not a consolidation clause, as it does not purport to consolidate *all* wrongful-death *claims* arising from the death of a single person—here, Teri Sue Robinson—into *one claim* for purposes of applying the policy limits. It does, however, provide a limitation of P.I.E.'s total exposure for all claims under the primary policy. Accordingly, pursuant to R.C. 3955.08(A)(1), OIGA's maximum exposure under the primary policy as to claims made in connection with the death of Teri Sue Robinson is $200,000.

{¶ 38} The P.I.E. excess policy provided coverage with a $1 million per claim limit, with an aggregate limit for all claims of $1 million. When the $200,000 available under the primary policy is combined with the $1,000,000 maximum exposure under the excess policy, the total liability under both P.I.E. policies is $1,200,000. Pursuant to R.C. 3955.01(2)(b), however, OIGA is not liable to pay any individual claimant an amount in excess of $300,000.

Judgment affirmed in part
and reversed in part.

BRYANT, F.E. SWEENEY and FARMER, JJ., concur.

PFEIFER, J., concurs in part and dissents in part.

LUNDBERG STRATTON, J., concurs in part and dissents in part.

O'CONNOR, J., concurs in part and dissents in part.

PEGGY BRYANT, J., of the Tenth Appellate District, sitting for RESNICK, J.

SHEILA G. FARMER, J., of the Fifth Appellate District, sitting for O'DONNELL, J.

---

**PFEIFER, J., concurring in part and dissenting in part.**

{¶ 39} The first syllabus paragraph of *Savoie v. Grange Mut. Ins. Co.* (1993), 67 Ohio St.3d 500, 620 N.E.2d 809, is not about automobile insurance policies; it

is about whether parties may contract away the statutory and constitutional underpinnings of wrongful-death claims in Ohio. This court wrote in *Savoie* that "[l]iability policy provisions which purport to consolidate wrongful death damages suffered by individuals are unenforceable because they directly violate the policy expressed by the General Assembly and this court." *Savoie*, 67 Ohio St.3d at 504, 620 N.E.2d 809. Whether the decedent died in an automobile or on the operating table is immaterial. The only relevant thing is that the decedent left behind survivors that are all rebuttably presumed pursuant to R.C. 2125.02 to have suffered damages resulting from the wrongful death. The claims of *each* person are recognized by law.

{¶ 40} Here, as in *Savoie*, the consolidation of wrongful-death damages suffered by different individuals is unlawful. The aggregate limit of $600,000 under the primary policy should have been available to the plaintiffs in this case.

{¶ 41} I concur with the majority's treatment of the excess policy. Thus, the total amount of coverage available to the plaintiffs in this case and payable by OIGA should be $1.6 million.

---

**LUNDBERG STRATTON, J., concurring in part and dissenting in part.**

{¶ 42} I concur in the syllabus paragraph; however, I respectfully dissent from the majority's analysis of the P.I.E. insurance contracts and its conclusion as to OIGA's statutory exposure.

{¶ 43} Plaintiffs asserted four claims against Dr. Katz, all derived from a single act of malpractice. For purposes of insurance coverage under the P.I.E. primary policy, however, the express language of the policy limits the company's liability "for all damages because of any one claim or suit or all claims or suits first made during the policy period because of injury to or death of any one person" to the limit for "each claim." I agree with Justice O'Connor that this is a clear and unambiguous consolidation clause. Therefore, under the primary policy, P.I.E. would have been liable up to the single-claim limit of $200,000.

{¶ 44} P.I.E.'s insolvency triggered OIGA's obligation as "insurer to the extent of [the insurer's] obligation on the covered claims." R.C. 3955.08(A)(2). A "covered claim" is defined as a claim *"which arises out of and is within the coverage of an insurance policy * * * issued by an insurer which becomes * * * insolvent."* (Emphasis added.) R.C. 3955.01(D)(1). It is limited by the language of the policy and the statutory cap of $300,000. R.C. 3955.01(D)(2)(b). In other words, OIGA steps into the shoes of P.I.E. *up to a maximum of $300,000.*

{¶ 45} Nevertheless, the majority obligates OIGA to pay up to $1.2 million for one medical malpractice action against Dr. Katz under the guise of four "covered claims" reaching Katz's excess liability policy. I do not agree that OIGA's payment of $200,000 constitutes exhaustion of the primary policy for purposes of reaching Katz's excess liability insurance policy. However, even if an OIGA payment of $200,000 satisfied the exhaustion requirement in the primary policy in order to access coverage under the excess policy, I believe that OIGA is obligated to pay only an additional $100,000 because its liability is capped by statute at $300,000.

{¶ 46} Katz's excess liability policy provides a level of coverage above that of the primary policy. The excess policy does not become an issue until the limits of the underlying primary policy are exhausted. Had P.I.E. remained solvent, the excess policy would have provided an additional $1 million of liability coverage upon exhaustion of the primary coverage. However, the excess policy applies "only if the underlying coverage is applicable and the claim is first made in accordance with the applicable provisions of the Underlying Insurance." Except in limited instances, the excess policy incorporates provisions of the underlying insurance, including the primary policy's consolidation clause.

{¶ 47} The purpose of the OIGA is to prevent catastrophic loss by compensating claimants when an insurance company becomes insolvent. *PIE Mut. Ins. Co. v. Ohio Ins. Guar. Assn.* (1993), 66 Ohio St.3d 209, 212, 611 N.E.2d 313. Although OIGA assumes the place of the insolvent insurer, it is *not* replacement insurance. I believe that the majority's interpretation has the potential to deplete OIGA funds by exposing OIGA to expansive, unanticipated liability that may jeopardize OIGA's financial stability and the viability of its funds for other qualified claimants. It will erode the system put in place by the General Assembly to protect policyholders and claimants who are affected by insolvent insurance companies. This decision will also potentially affect all Ohio insurance consumers as the cost of these multiple claims is ultimately passed on to them through increased premiums.

{¶ 48} The General Assembly intended OIGA to pay what the insolvent insurer would have been obligated to pay, *subject to a statutory maximum limit of $300,000 per claim*. Today's majority ignores that limit in favor of expansive liability that obligates OIGA to the maximum insurance coverage that was available under the P.I.E. policies. I do not agree with this interpretation. Therefore, to the extent that the majority recognizes more than one "covered claim," I respectfully dissent.

14

**O'CONNOR, J., concurring in part and dissenting in part.**

{¶ 49} I concur with the syllabus announced by the majority that *Savoie v. Grange Mut. Ins. Co.* (1993), 67 Ohio St.3d 500, 620 N.E.2d 809, is an aberration that should be limited to cases with similar facts. This aberration was spawned by earlier uninsured-underinsured motorist law, which the legislature revised by means of 1994 Am.Sub.S.B. No. 20, 145 Ohio Laws, Part I, 204, 210–212, and subsequent acts into the current R.C. 3937.18. The current statute provides limited guidance for ascertaining OIGA's liability under R.C. Chapter 3955 for a medical malpractice insurance policy issued by a now insolvent insurer.

{¶ 50} I dissent because the survivorship and wrongful-death claims, which the majority effectively consolidates into one claim under the primary policy, should also be consolidated into one claim under the excess policy. Moreover, a single claim submitted to OIGA under an excess or umbrella policy may recover $300,000 more than what is available from the primary policy. I would award the plaintiffs $200,000 under the primary policy and $300,000 under the excess policy for a total of $500,000.

{¶ 51} My disagreement with the majority begins with its treatment of the primary policy's "Limits of Liability" section. The majority correctly states that this section subjects the plaintiffs' four claims to a single $200,000 limit under the primary policy, which has a $200,000 per-claim limit and an aggregate limit of $600,000. The majority, however, states that the limits-of-liability section does not consolidate the claims. The majority inconsistently holds both that there are four unconsolidated claims and that the four unconsolidated claims are collectively restricted to the one $200,000 per-claim limit of the primary policy. Subjecting multiple claims to a single limit is the very definition of claims consolidation. The declarations page of the primary policy states that the policy will pay up to "$200,000 [for] each claim." The limits-of-liability section defines "each claim" as "all claims or suits * * * because of injury to or death of any one person." An analogous statute, R.C. 3937.18(G), provides that automobile liability insurance policies "may * * * include terms and conditions to the effect that all claims resulting from or arising out of any one person's bodily injury, including death, shall collectively be subject to the limit of the policy applicable to bodily injury, including death, sustained by one person, and, for the purpose of such policy limit shall constitute a single claim." This form of consolidation is exactly what the P.I.E. primary policy accomplished. Therefore, the limits-of-liability section of the policy, Section V(A), is a clear and unambiguous consolidation clause. See *Clark v. Scarpelli* (2001), 91 Ohio St.3d 271, 282, 744 N.E.2d 719, and *Saunders v. Mortensen,* 101 Ohio St.3d 86, 2004-Ohio-24, 801 N.E.2d 452, ¶ 16–17. The policy even refers to the collective claims with the singular "each claim." Accordingly,

the plaintiffs are jointly entitled to no more than $200,000 under the primary policy.

{¶ 52} Second, I find that under R.C. Chapter 3955, a claim under an excess policy is a "covered claim" separate from a claim made under the primary policy and accordingly subject to an independent $300,000 limit. R.C. 3955.01(D)(1) defines "[c]overed claim" as an unpaid claim "which arises out of and is within the coverage of *an insurance policy*" to which Chapter 3955 applies. (Emphasis added.) This definition of "covered claim" restricts the term to a claim made under a single insurance policy. An excess insurance policy is physically and legally separate from a primary policy. Identical claims submitted under each policy constitute two "covered claims."

{¶ 53} Here, the coverage in the excess policy is provided "in accordance with the applicable provisions of the Underlying Insurance." Because I believe that the limits-of-liability section of the primary policy consolidated the plaintiffs' claims,[3] it follows that plaintiffs are jointly entitled to no more than $300,000 under the excess policy.

{¶ 54} I would allow $200,000 (per-claim policy limit) under the primary policy and $300,000 ("covered claim" statutory limit) under the excess policy for a total possible award of $500,000.

{¶ 55} This award would be consistent with the stated purpose of R.C. Chapter 3955, which is to "reduce," but not necessarily eliminate, "financial loss to claimants or policyholders because of the insolvency of an insurer." R.C. 3955.03. Contrary to the majority's interpretation, the chapter is not intended to fully guarantee each covered insurance policy.

---

Spengler Nathanson P.L.L., James R. Jeffery and Teresa L. Grigsby, for appellee Gordon L. Katz, D.O.

Vorys, Sater, Seymour & Pease, L.L.P., F. James Foley and Michael Thomas, for appellant.

J. Tracy Sniderhan, for appellee Susan Robinson.

Dykema Gossett, P.L.L.C., William M. Thacker and Suzanne Sahakian, urging reversal for amicus curiae National Conference of Insurance Guaranty Funds.

Berns, Ockner & Greenberger L.L.C., Sheldon Berns and Paul M. Greenberger, urging affirmance for amicus curiae William Witt, M.D.

---

3. The majority does not satisfactorily explain why it treats the plaintiffs' claims collectively under the primary policy but separately under the excess policy.