## In re ESTATE OF ALEXANDER.

[Cite as *In re Estate of Alexander* (1993), 92 Ohio App.3d 190.]

Court of Appeals of Ohio,
Cuyahoga County.

No. 64102.

Decided Dec. 6, 1993.

Nurenberg, Plevin, Heller & McCarthy Co., L.P.A., Richard L. Demsey, Joel Levin and Sandra J. Rosenthal, for appellant administrator.

Jacobson, Maynard, Tuschman & Kalur Co., L.P.A., William D. Bonezzi, Robert C. Seibel and Douglas G. Leak, for appellees.

KRUPANSKY, Judge.

The appeal *sub judice* is the second appeal in this probate court action. The first appeal on the merits was dismissed as being untimely filed from a probate court judgment entry ordering the distribution of a wrongful death medical malpractice action. The appeal *sub judice* stems from a subsequent order of the probate court denying a Civ.R. 60(B) motion for relief from judgment from the prior probate court judgment entry approving the wrongful death settlement. Appellant in this action seeks to vacate a $400,000 wrongful death settlement reached between decedent's estate and the defendant doctor and his insurer because the estate's own attorney embezzled the settlement funds, thereby allegedly perpetrating a fraud on the probate court.

Decedent Garlin Alexander, a thirty-two-year-old postal worker, died intestate on May 29, 1987, following outpatient sinus and nasal surgery performed two days earlier by Dr. Stephen Schreibman at Suburban Community Hospital. Decedent's sister Loretta Nesbitt, represented by attorney Michael Greenwald of the law firm Barragate & Barragate, commenced the probate case *sub judice* by filing an application for authority to administer decedent's estate in Cuyahoga County Court of Common Pleas, Probate case No. 100875, July 28, 1987 (the "Probate Case"). The probate court thereafter appointed Nesbitt administrator upon the filing of a bond. Administrator Nesbitt subsequently filed a wrongful

death medical malpractice action against Dr. Schreibman and Suburban Community Hospital on March 3, 1988 in Cuyahoga County Common Pleas Court General Division, case No. CV–145526 (the "Wrongful Death Case"). Attorney Phillip Barragate of the law firm of Barragate & Barragate served as counsel of record for plaintiffs in the Wrongful Death Case.

Barragate subsequently negotiated a settlement of the Wrongful Death Case with counsel for Dr. Schreibman and Dr. Schreibman's medical malpractice liability insurer, PIE Mutual Insurance Company ("PIE"). PIE issued a check to Barragate dated June 9, 1988 in the amount of $400,000 payable to "Loretta Alexander Nesbitt, Administratrix of the Estate of Garlin Alexander, deceased and her attorneys Barragate & Barragate." The Wrongful Death Case was thereafter dismissed without prior probate court approval on July 14, 1988. Barragate obtained payment of the $400,000 settlement check by endorsing the name of his law firm and directing attorney Greenwald to affix the name of Nesbitt as administrator pursuant to authority purportedly conferred by power of attorney.

Administrator Nesbitt did not execute a release or seek approval of the Wrongful Death Case settlement by the probate court until more than one and one-half years thereafter. Nesbitt executed a release in favor of Dr. Schreibman and Suburban Community Hospital on April 25, 1990 and, through attorney Greenwald, filed an "Application to Approve Wrongful Death Settlement, Attorney Fees and Partial Distribution" in the probate court on May 7, 1990, with a request for immediate hearing. The record demonstrates that probate court referee Oglesby conducted a hearing on the application on May 7, 1990 to approve the Wrongful Death Case settlement but no verbatim transcript of this hearing was made.

The probate court thereafter entered a journal entry approving the $400,000 Wrongful Death Case settlement and awarded partial distributions for attorney and fiduciary fees and funeral expenses on May 7, 1990 (the "Wrongful Death Case Settlement Approval Entry"). The decedent's minor son, father and five adult siblings were apparently unable to agree on a final distribution of the remaining settlement proceeds. The probate court Wrongful Death Case Settlement Approval Entry found that all decedent's heirs and next of kin consented to the $400,000 settlement and reserved distribution of the remaining settlement proceeds until further order of the probate court.

The record demonstrates that a probate court referee thereafter conducted a hearing concerning the distribution of the remaining Wrongful Death Case settlement proceeds August 27, 1990. The referee filed a report December 11, 1990 which recommended the award of $217,526.52 to the guardian of decedent's minor son, $8,500 to Administrator Nesbitt and $5,000 to decedent's father and

each of decedent's five adult siblings. Decedent's brother Gerald Alexander filed objections to the referee's report and recommendations December 20, 1990. The probate court subsequently overruled the objections of Gerald Alexander and ordered distribution of the proceeds in the manner set forth above in entries journalized March 12, 1991 (the "Wrongful Death Settlement Distribution Order"). Gerald Alexander's April 22, 1991 appeal from the probate court Wrongful Death Settlement Distribution Order in Court of Appeals case No. 61684 was dismissed by this court of appeals as untimely filed in an order journalized May 3, 1991.

The record contains no further activity in the probate court to collect the settlement proceeds following the March 12, 1991 Wrongful Death Settlement Distribution Order until decedent's former wife and minor child filed against attorneys Greenwald and Barragate on September 27, 1991 a "Motion to Show Cause or, in the alternative, to Distribute Funds." The probate court granted the motion to show cause and to disburse the fiduciary fees, funeral expenses and parties' respective shares of the Wrongful Death Case settlement proceeds in an order journalized October 2, 1991.

Decedent's former wife and minor child subsequently filed a "Complaint for Concealment and Embezzlement of Assets" against attorneys Greenwald and Barragate October 17, 1991. The probate court found Barragate "intentionally and wilfully concealed and embezzled money from decedent's estate" and entered judgment against Barragate and Greenwald in the amount of $266,026.52, together with ten percent penalty, statutory interest and costs in an order journalized October 30, 1991.

The record demonstrates Administrator Nesbitt was subsequently replaced by appellant Thomas Griveas as administrator of decedent's estate pursuant to orders of the probate court journalized in November 1991. Administrator Griveas thereafter filed a two-page motion to vacate judgment relating to the probate court's May 7, 1990 Wrongful Death Case Settlement Approval Entry on November 18, 1991. The record demonstrates this motion did not cite Civ.R. 60(B), argue any specific grounds for relief under this rule, request an evidentiary hearing or attach any evidentiary materials.

Nevertheless, the record demonstrates the probate court conducted a hearing on the motion of administrator Griveas to vacate the Wrongful Death Case Settlement Approval Entry on April 12, 1992. The administrator presented testimony from the following three witnesses during the hearing, *viz.:* (1) former administratrix Nesbitt; (2) former probate court referee Oglesby; and (3) attorney Phillip Barragate. Counsel for Dr. Schreibman and his insurer PIE appeared at the proceedings and cross-examined the three witnesses. The record demonstrates the probate court denied the motion of administrator

Griveas to vacate the Wrongful Death Case Settlement Approval Entry in a ten-page judgment entry containing findings of fact and conclusions of law journalized June 24, 1992. Administrator Griveas ("appellant") timely appeals raising two assignments of error.

Appellant's first assignment of error follows:

"The probate court erred in overruling movant-appellant's motion for relief from judgment when there was a fraud upon the court, the judgment was inequitable, and there was newly discovered evidence which would have changed the outcome of the case."

Appellant's first assignment of error lacks merit.

In his appellate brief, appellant contends the probate court improperly denied his motion to vacate the Wrongful Death Case Settlement Approval Entry since he demonstrated sufficient grounds for relief under Civ.R. 60(B)(2), (4) and (5).

■■■■ However, it is well established that a reviewing court will not reverse a trial court's denial of a Civ.R. 60(B) motion for relief from judgment absent an abuse of discretion. *Rose Chevrolet, Inc. v. Adams* (1988), 36 Ohio St.3d 17, 20, 520 N.E.2d 564, 566–567; *Griffey v. Rajan* (1987), 33 Ohio St.3d 75, 77, 514 N.E.2d 1122, 1124. To demonstrate an abuse of discretion to warrant reversal on appeal, appellant must establish that the trial court committed more than an error of law or judgment and that its decision was unreasonable, arbitrary or unconscionable. See *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 482–483, 450 N.E.2d 1140, 1142; *Hopkins v. Quality Chevrolet, Inc.* (1992), 79 Ohio App.3d 578, 581, 607 N.E.2d 914, 916.

As noted above, appellant's motion to vacate the Wrongful Death Case Settlement Approval Entry did not cite Civ.R. 60(B), attempt to establish the timeliness of the motion or any specific grounds for relief under Civ.R. 60(B)(1) through (5), attach any exhibits or request an evidentiary hearing. Rather than denying the motion based on these defects, however, Probate Court Judge Donnelly conducted an evidentiary hearing to provide appellant an opportunity to establish grounds for relief under Civ.R. 60(B). A court reporter was present at this hearing and a transcript of these proceedings was filed with this appeal. Based on our review of this transcript and the record *sub judice*, appellant has failed to demonstrate the probate court improperly applied the governing law, that its findings of fact were unsupported by the evidence or that its decision denying his Civ.R. 60(B) motion was unreasonable, arbitrary or unconscionable.

■■■■ The probate court's lucid findings of fact and conclusions of law supporting its denial of appellant's Civ.R. 60(B) motion provide in their entirety as follows:

## FINDINGS OF FACT

"1.   Garlin Alexander died intestate on May 29, 1987 survived by a minor child, Michael Alexander (age 10).

"2.   On July 28, 1987, Loretta Nesbitt, the decedent's sister, was appointed administratrix of the estate, in which capacity she served until November 13, 1991.

"3.   The administratrix retained attorneys Michael Greenwald and Philip [*sic*] Barragate to pursue a medical malpractice/wrongful death claim arising from Mr. Alexander's death.

"4.   On March 3, 1988, Ms. Nesbitt, through attorneys Barragate and Greenwald, filed an action in the Court of Common Pleas of Cuyahoga County which was assigned to Judge William Aurelius under Case No. 145526.   Dr. Schreibman was named as a Defendant along with Meridia Suburban Hospital.

"5.   In pursuit of the estate's claim, Attorney Barragate had the facts surrounding Mr. Alexander's death reviewed by two qualified medical experts who practiced in the same medical specialty as Dr. Schreibman.   One of the physicians who reviewed the case at Mr. Barragate's request found that Mr. Alexander's death was an unfortunate complication of the surgical procedure performed rather than negligence.   The other physician engaged by Mr. Barragate to review the case found that Dr. Schreibman had been negligent and had caused Mr. Alexander's death.

"6.   Attorney William Bonezzi of the law firm of Jacobson, Maynard, Tuschman & Kalur Co., LPA represented Dr. Schreibman who was insured by the PIE Mutual Insurance Co.

"7.   During discussions with Mr. Bonezzi, Mr. Barragate learned that Dr. Schreibman's defense would, at least in part, argue that Mr. Alexander's death was an unfortunate complication of surgery, and was not a result of negligence by Dr. Schreibman.

"8.   During 1988, while the estate's claim against Dr. Schreibman was pending, Mr. Barragate was experiencing substantial personal financial difficulties, including an increasing arrearage on a mortgage on his personal residence and a substantial federal income tax liability.

"9.   Sometime during the first half of 1988, Mr. Barragate approached Attorney Aaron Jacobsen [*sic*], and without revealing his dire financial condition, requested that the settlement process for the Alexander claim be accelerated. Mr. Barragate told Mr. Jacobson that he was trying to resolve his significant cases because he was either going to be appointed to the bench, or seek election as judge.

"10. When Mr. Jacobson responded that the highest settlement offer of the defendants was $400,000, Mr. Barragate accepted. PIE then issued a check drawn on National City Bank dated June 91 [*sic*], 1988 in the amount of $400,000 which was made payable to Loretta Alexander Nesbitt, Administratrix of the Estate of Garlin Alexander, deceased and her attorneys Barragate & Barragate. Accompanying the check was a proposed release.

"11. By agreement of the parties, the case pending before Judge Aurelius was dismissed with prejudice on July 14, 1988. This dismissal was without the approval of the probate court.

"12. Upon receipt of the settlement check, someone other than the administratrix endorse the check which was deposited into Mr. Barragate's IOLTA account on June 20, 1988.

"13. Mr. Barragate used the funds from this settlement (and apparently others) in an unsuccessful attempt to extricate himself from his financial straits by making numerous risky investments. Mr. Barragate has no funds remaining to reimburse the estate for the loss.

"14. On April 25, 1990, Loretta Alexander Nesbitt, as Administrator of the Estate signed a release in favor of Steven D. Schreibman, M.D. and Suburban Community Hospital. The release stated that, "this release is entered into pursuant to authority granted by the Probate Court, Division of Common Pleas, Cuyahoga County, State of Ohio, on the __ day of _____, 1990, to make settlement of all claims, including but not limited to, the wrongful death of Garlin Alexander, Deceased." This release was executed almost two years after the funds had been misappropriated by Barragate, and 12 days before application to approve wrongful death distribution was filed with the probate court.

"15. On May 7, 1990, Probate Court Referee Lurlia Oglesby heard Ms. Nesbitt's Application to Approve Wrongful death Settlement and Attorney's Fees and Partial Distribution. After receiving information about the decedent's age, occupation, marital status, and dependents, along with counsel's arguments regarding contested liability, the court referee recommended approval of the $400,000 settlement. No Court reporter was present and the only record of the proceeding consists of the referee's notes.

"16. Subsequent thereto, the Court reviewed the Application to Approve Wrongful Death Settlement, and the recommendation of Referee Oglesby included therein. The referee's recommendation included the following:

" '... 32–year–old male postal worker in for out-patient surgery for sinusitis; brain was punctured; suffered hemorrhage and asphyxiation. Settlement as to all defendants. Liability problems centered around injury and ultimate cause of death being natural risks of this type of procedure....'

"17. As a result, this Court issued an order on May 7, 1990 approving the settlement. At that time, this Court deferred an order distributing the settlement proceeds among the estate's beneficiaries, since the beneficiaries of the estate could not agree on a distribution of the proceeds among Mr. Alexander's surviving siblings and minor child.

"18. On November 18, 1991, Thomas Griveas, Administrator of the Estate of Garlin M. Alexander, filed a Motion to Vacate prior probate court approval of settlement."

## CONCLUSIONS OF LAW

"1. To prevail on a Civ.R. 60(B) motion the movant must demonstrate each of the following:

"(a) the motion is made within a reasonable time, and, where the grounds of relief are 60(B)(1), (2) or (3), not more than one year after the judgment, order or proceeding was taken;

"(b) the party is entitled to relief under one of the grounds stated in Civ.R. 60(B)(1) through (5);

"(c) the party has a meritorious defense or claim to present if relief is granted. *GTE Automatic Electric v. ARC Industries* (1976), 47 Ohio St.2d 146 [1 O.O.3d 86, 351 N.E.2d 113], paragraph 2 of syllabus; *Svoboda v. Brunswick* (1983), 6 Ohio St.3d 348, 6 OBR 403 [453 N.E.2d 648]; *Argo Plastic Products v. Cleveland* (1984), 15 Ohio St.3d 389, 15 OBR 505 [474 N.E.2d 328].

"2. Should any prong of the above standard be unsatisfied, relief shall be denied. *Argo, supra* [15 Ohio St.3d at 391–392, 15 OBR], at 507 [474 N.E.2d at 330–331].

"3. R.C. 2125.02(C) provides in pertinent part:

" 'A personal representative appointed in this state, with the consent of the court making the appointment and at any time before or after the commencement of an action for wrongful death, may settle with the defendant the amount to be paid.'

"4. The above section vests the probate court with jurisdiction to approve a settlement offer concerning a wrongful death claim. *Burris v. Grange Mutual Companies* (1989), 46 Ohio St.3d 84, 94 [545 N.E.2d 83, 92–93].

"5. The probate court shall determine whether the settlement offer is fair and equitable taking into consideration various factors. *Burris, supra,* at 94 [545 N.E.2d at 92–93]. These factors include the decedent's age, occupation, marital status and dependents. In addition, liability questions and the potential hazards of litigation must be considered.

"6. The probate court shall consider the universe of possible jury awards in determining whether the settlement offer is fair and equitable. *Molton v. Cleveland* (1988), 839 F.2d 240, 250.

"7. The probate court shall see that the settlement offer is supported by the evidence. *Molton, supra,* at 250.

"Movant is seeking relief pursuant to Civ.R. 60(B)(2), (B)(3), (B)(4) and (B)(5) from a judgment approving settlement entered on May 7, 1990. The instant motion was filed on November 18, 1991, a year and a half after judgment was entered. A Motion for relief from judgment pursuant to Civ.R. 60(B)(1), (2) or (3) must be made with[in] a year of judgment. See *GTE Automatic Electric v. Arc Industries* (1976), 47 Ohio St.2d 146 [1 O.O.3d 86, 351 N.E.2d 113], paragraph 2 of syllabus; *Svoboda v. Brunswick* (1983), 6 Ohio St.3d 348, 6 OBR 403 [453 N.E.2d 648]; *Argo Plastic Products v. Cleveland* (1984), 15 Ohio St.3d 389, 15 OBR 505 [474 N.E.2d 328]. The Court finds that no relief is available under Civ.R. 60(B)(2) or (3) since the motion was not timely filed.

"Movant also seeks relief pursuant to Civ.R. 60(B)(4), alleging that it is no longer equitable that the judgment have prospective application. Movant proffers two reasons for relief:

"(1) Barragate embezzlement of the funds; and

"(2) Settlement without probate court approval.

"The Court finds that neither the embezzlement nor the premature settlement render the amount of this settlement unfair or inequitable. This Court approved the settlement for $400,000 because that amount was fair and equitable under the circumstances. See *Burris v. Grange Mutual Companies* [*supra* ]. The fact that those funds were embezzled doesn't change the fact that the amount was fair. The fact that Barragate settled prior to probate court approval does not change the fact that this amount was fair and equitable. Both facts are unfortunate but do not affect the fairness of the amount of the settlement. The Court finds that relief from judgment under 60B(4) is not warranted for these reasons.

"Movant also seeks relief from judgment pursuant to Civil Rule 60B(5), alleging fraud upon the Court. Movant alleges various frauds upon the Court. The only alleged frauds upon the Court which are in any way related to the approval of settlement on May 7, 1990, are those of Mr. Greenwald at the hearing on that date. In particular movant alleges that Mr. Greenwald perpetrated four frauds upon this Court by:

"(1) Stating that the case had liability problems;

"(2) Stating that he could not get a favorable expert's report;

"(3) Stating that many depositions were taken;

"(4) Implying that the funds had not been received or misappropriated.

"The Court finds that the statement indicating the wrongful death action had liability problems is not fraudulent. The fact is that Mr. Barragate received two expert reports concerning this case. One expert found negligence on Dr. Schreibman's part. The other expert found that this death was a complication of the procedure and not a result of any negligence on the part of the physician. As a result, when Mr. Greenwald told the Court that there were liability problems with the case, no fraud occurred.

"The second alleged fraud upon the Court concerns Mr. Greenwald stating that he could not get an expert's report. The Court finds no evidence, besides the claims of movant, that Mr. Greenwald communicated this to the Court. Mr. Greenwald may have communicated this to the administratrix but not to the Court during the hearing on May 7, 1990.

"The third alleged fraud concerns the statement by Mr. Greenwald that many depositions were taken. The Court finds that this statement was made and was fraudulent as no depositions were taken and Mr. Greenwald knew this when he made the statement. Movant fails to state and the Court is unable to find how this fraud rendered the $400,000 settlement unfair or inequitable. Mr. Barragate obtained expert reports revealing a potential liability problem. Upon review of the circumstances this Court is unable to conclude that the $400,000 settlement is unfair or inequitable. The $400,000 amount is definitely within the universe of possible awards a jury might return. See *Molton v. Cleveland* (1988), 839 F.2d 240, 250. Movant has failed to establish a basis to vacate the judgment.

"The final alleged fraud upon the Court by Mr. Greenwald concerns the implication that the funds had not been received or misappropriated. Movant again fails to state how this fraud rendered the $400,000 settlement amount unfair or inequitable. The fact that this implication was made to the Court does not impact upon the issue of whether the settlement was fair and equitable under the circumstances. The Court finds that this implication does not change the fairness of the $400,000 settlement amount. As a result, the Court will not vacate the approval for this reason.

"The Court finds that the motion for Relief from Judgment pursuant to Civ.R. 60(b) [*sic*] (2), (3), (4) and (5) is not well taken and is hereby overruled.

"It is therefore ordered, adjudged and decreed that the Motion for Relief from Judgment, pursuant to Civ.R. 60(B)(2), (3), (4) and (5) is overruled."

Appellant's brief on appeal does not challenge any of the probate court's specific findings of fact or conclusions of law set forth above and merely seeks to

relitigate the merits of his Civ.R. 60(B) motion.[1]  However, we decline appellant's invitation to substitute our judgment for that of the probate court.  Based on our review of the transcript and record, the probate court's findings of fact and conclusions of law are amply supported by the evidence and appellant has failed to demonstrate the probate court abused its discretion by denying his Civ.R. 60(B) motion.

Appellant has failed to demonstrate the probate court abused its discretion by denying relief from the May 7, 1990 Wrongful Death Settlement Approval Entry on the grounds of "newly discovered evidence" pursuant to Civ.R. 60(B)(2).  As noted by the probate court, appellant's Civ.R. 60(B) motion filed on November 18, 1991 (more than eighteen months after the judgment from which relief was sought) was untimely and failed to cite any authority applying a "discovery rule" to toll the express one-year deadline set forth in Civ.R. 60(B)(2).  Appellant compounded this defect by failing to produce any authority holding that Civ.R. 60(B)(2) provides grounds for relief from judgment on a litigation settlement agreement.

■  Civ.R. 60(B)(2) is designed by its own terms to provide relief from judgment based on information discovered more than fourteen days following judgment after trial when such information constitutes "newly discovered evidence" under Civ.R. 59(A)(8).  Since the settlement agreement was reached by the parties out of court, no "trial" occurred.  Therefore, newly discovered evidence does not constitute grounds for a "new trial."

■  However, even if Civ.R. 60(B)(2) applied to settlement agreements, based on our review of the transcript and record *sub judice* none of the evidence offered by appellant during the hearing before Probate Judge Donnelly constituted grounds for a "new trial" or to set aside the $400,000 wrongful death settlement agreement entered with the consent of all interested persons which the probate court found to be fair and equitable.

Finally, the transcript and record contain nothing to indicate the information alleged to constitute "newly discovered evidence" could not have been discovered earlier with due diligence.  The record indicates no action to collect the settlement proceeds from the time when the probate court ordered distribution "forthwith" on March 12, 1991 until more than six months thereafter on September 27, 1991.

---

1. Appellant's brief on appeal does not challenge the probate court's denial of his motion under Civ.R. 60(B)(3) and raises arguments concerning the denial under Civ.R. 60(B)(2), (4) and (5) only.

Appellant has likewise failed to demonstrate the probate court abused its discretion by denying relief from the settlement on the grounds that it was "no longer equitable that the judgment should have prospective application" under Civ.R. 60(B)(4). The probate court specifically noted that it originally approved the wrongful death settlement agreement pursuant to R.C. 2125.02(C) because the $400,000 settlement was "fair and equitable" under the circumstances. Moreover, the May 7, 1990 probate court Wrongful Death Case Settlement Approval Entry specifically found that all heirs and next of kin consented to the settlement. The fact that the Wrongful Death Case was settled by Barragate without prior probate court approval and that the funds were subsequently misappropriated by Barragate does not alter the fact that the settlement was fair, equitable and resulted from the consent of all the beneficiaries. It is well established, contrary to appellant's argument, Civ.R. 60(B)(4) does not relieve litigants from the consequences of their voluntary, deliberate choice to enter into litigation settlement agreements. *Knapp v. Knapp* (1986), 24 Ohio St.3d 141, 24 OBR 362, 493 N.E.2d 1353, paragraph two of the syllabus.

Appellant has likewise failed to demonstrate the probate court abused its discretion by denying relief from the settlement under the "any other reason justifying relief from the judgment" grounds set forth in Civ.R. 60(B)(5) based on misrepresentations allegedly made by Greenwald to the probate court referee during the approval hearing. The probate court noted that the record contains no verbatim transcript of the hearing conducted by probate court referee Oglesby prior to making her report concerning the wrongful death settlement agreement. The handwritten report of referee Oglesby, which constitutes the only record of the proceedings, states as follows:

" * * * 32 year old [male] postal worker in for out-patient surgery for sinusitis; brain was punctured; suffered hemorrhage and asphyxiation. Settlement as to all defendants. Liability problems centered around injury and ultimate cause of death being natural risks of this type of procedure. Atty fees ⅓ plus exp. Fid. fees (dozens of conferences depos, etc.) $10m. Funeral ex 5,000."

Without an adequate record of this proceeding before referee Oglesby, this court must presume regularity and has no basis to dispute the probate court findings of fact concerning the referee's hearing. See *Rose Chevrolet, Inc. v. Adams, supra.*

Based on our review of the transcript and record *sub judice,* appellant has failed to demonstrate the probate court abused its discretion by denying his Civ.R. 60(B) motion to vacate the approval of the wrongful death settlement agreement. The probate court specifically found the $400,000 wrongful death settlement agreement was fair and equitable prior to approving the settlement

with the consent of all interested persons and none of the evidence presented by appellant undermined this conclusion.

Accordingly, appellant's first assignment of error is overruled.

Appellant's second assignment of error follows:

"The probate court erred in allowing standing to respondents Dr. Schreibman and P.I.E."

Appellant's second assignment of error lacks merit.

■■■ Appellant contends the probate court improperly granted Dr. Schreibman and PIE "standing" to participate in the hearing on the motion to vacate approval of the $400,000 wrongful death settlement agreement. Appellant contends in his five-sentence argument under this assignment of error that Dr. Schreibman and his insurer did not have a sufficient "personal stake in the settlement process" to oppose vacating the probate court's approval of the wrongful death settlement.

Based on our review of the transcript and record, appellant has failed to demonstrate the probate court committed reversible error by allowing counsel for Dr. Schreibman and PIE to participate in the hearing on appellant's motion to vacate the Wrongful Death Case Settlement Approval Entry. First, the record demonstrates appellant waived any claim of error by failing to raise any objection at the oral hearing of April 15, 1992. See *Maust v. Meyers Products, Inc.* (1989), 64 Ohio App.3d 310, 313–314, 581 N.E.2d 589, 591–592. Appellant did not raise this contention until more than six weeks thereafter in his June 1, 1992 post-hearing brief and proposed findings of fact and conclusions of law.

Moreover, even if appellant had properly raised and preserved this issue, appellant has failed to demonstrate the probate court abused its discretion or that appellant suffered any resulting prejudice. Dr. Schreibman and his insurer clearly had an "interest" in the approved wrongful death settlement, *viz.*, if the judgment entry were vacated pursuant to the Civ.R. 60(B) motion, Dr. Schreibman and his insurer were again subject to potential liability. We note that the participation of counsel for Dr. Schreibman and his insurer in the hearing on appellant's motion to vacate was limited to cross-examination of appellant's witnesses. The fact that Dr. Schreibman and his insurer cross-examined the witnesses does not reflect on whether the Wrongful Death Case Settlement Agreement was fair and equitable. The probate court was certainly not required to grant appellant's motion to vacate the Wrongful Death Case Settlement Approval Entry even if there was no opposition. Finally, as noted above in connection with appellant's first assignment of error, error, if any, in permitting Dr. Schreibman and PIE to participate in the hearing was harmless since

appellant failed to sustain his burden of demonstrating relief was warranted under Civ.R. 60(B).

Accordingly, appellant's second assignment of error is overruled.

*Judgment affirmed.*

SPELLACY, P.J., and PORTER, J., concur.