[Cite as *Kell v. Verderber*, 2013-Ohio-4223.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

MARY JO KELL,                                   :        APPEAL NO. C-120665
                                                         TRIAL NO. A-7302388
    Plaintiff/Third-Party Plaintiff-               :
Appellant,                                                   *O P I N I O N.*

                                                :

  vs.                                         :

RUDOLPH F. VERDERBER,                           :

    Defendant-Appellee,                        :

  and                                           :

KATHLEEN S. VERDERBER,                          :

  and                                           :

VERDERBER SERVICES, INC.                        :

    Third-Party Defendants-                    :
Appellees.                                      :


Civil Appeal From:  Hamilton County Court of Common Pleas, Domestic Relations
                  Division

Judgment Appealed From Is:  Affirmed in Part, Reversed in Part, and Cause
                       Remanded

Date of Judgment Entry on Appeal:  September 27, 2013


*Barbara J. Howard Co., L.P.A., Barbara J. Howard* and *Thomas E. Meade*, for
Plaintiff/Third-Party Plaintiff-Appellant,

*Taft, Stettinius & Hollister, LLP,* and *Aimee L. Keller*, for Defendant-Appellee
Rudolph Verderber, and Third-Party Defendants-Appellees Kathleen S. Verderber
and Verderber Services, Inc.


Please note:  this case has been removed from the accelerated calendar.

**DINKELACKER, Judge.**

{¶1}    Plaintiff/third-party plaintiff-appellant Mary Jo Kell appeals from a decision of the Hamilton County Court of Common Pleas, Domestic Relations Division, overruling her motion asking the court to hold defendant-appellee Rudolph F. Verderber in contempt, overruling her Civ.R. 60(B) motion for relief from judgment and granting summary judgment in favor of Rudolph and third-party defendants-appellees Kathleen F. Verderber and Verderber Services, Inc. We find merit in one of Mary Jo's seven assignments of error. Therefore, we affirm the trial court's judgment in part and reverse it in part, and we remand the cause for further proceedings.

### I.    Facts and Procedure

{¶2}    Mary Jo and Rudolph were divorced in 1973. The divorce decree incorporated the terms of a separation agreement. Paragraph 12 of the agreement provided that Rudolph would execute a will leaving "no less than 50% of his estate to the children of the parties."

{¶3}    During the marriage, Rudolph had authored, with Mary Jo's assistance, a textbook entitled *The Challenge of Effective Speaking* ("*Challenge*"). Paragraph 9 of the separation agreement provided in pertinent part:

> After the year 1972, Wife shall be entitled to one third of the royalties
> that shall accrue from "Challenge of Effective Speaking" and Husband
> shall have two thirds of the Royalties. It is understood by and between
> the parties on or before May 1st, of each year beginning with May 1st,
> 1974, Husband shall fully account to Wife for Royalties received for
> sales during the previous year. The above arrangement shall be

2

applicable to Editions 1 and 2 of "Challenge of Effective Speaking" and to any subsequent editions.

{¶4} In 1979, Mary Jo filed a motion to show cause why Rudolph should not be held in contempt for failing to pay royalties as required by paragraph 9 of the separation agreement. A referee found Rudolph to be in contempt, and stated that he could purge the contempt by paying the royalties as required by paragraph 9. Rudolph filed objections to the referee's report.

{¶5} But the trial court never ruled on the objections. On January 29, 1981, the parties filed an entry of satisfaction. It stated: "Now comes the plaintiff, Mary Jo Kell, and says that the dispute between the parties has been satisfied and the Motion to Show Cause is hereby dismissed with prejudice[.]"

{¶6} The settlement agreement, which was never filed with the court, stated that in exchange for a $40,000 lump-sum payment of child support from Rudolph, Mary Jo agreed "to dismiss with prejudice the pending court action against Rudolph F. Verderber for contempt of court, for failure to make payments under Section nine (9) of the Separation Agreement incorporated into the Decree of Divorce between the parties[.]" She further agreed to "release Rudolph F. Verderber from any obligation under said Section nine (9)." Finally, the agreement stated that "[s]ave and except as to the matters contained in this Agreement, each of the parties do hereby forever release the other from any and all claims, liabilities, causes of action, and all of the covenants, terms, conditions, obligations as set forth or arising out of in [sic] Section nine (9) of the aforesaid Separation Agreement."

{¶7} Thirty years later, on August 4, 2011, Mary Jo filed a motion for contempt, a motion for relief from judgment under Civ.R. 60(B), a motion for the imposition of a constructive trust, and a motion to add third-party defendants. In

3

those motions, she alleged that Rudolph had failed to comply with the provisions of paragraphs 9 and 12 of the separation agreement.

{¶8}    According to Mary Jo, after she had filed her 1979 contempt motion, Rudolph had told her that *Challenge* was no longer widely circulated and, therefore, no future distribution of royalties would be forthcoming.  She did not discover until March 2011 that Rudolph had misrepresented that *Challenge* was no longer generating royalties.  As a direct result of that misrepresentation, she had not pursued her rights, and Rudolph had been able to avoid accounting for and paying royalties.  Instead, he had diverted *Challenge* royalties to a privately held corporation under his control, Verderber Services.

{¶9}    Mary Jo also contended that Rudolph had failed to disclose the existence of a new book entitled "*Communicate!*," which she contended was written, at least in part, during the marriage.  She alleged that *Communicate!* was taken in large part from *Challenge*.  She stated, "For intents and purposes, it was a 'subsequent edition' of *Challenge* as contemplated by the [separation] Agreement since the intent of the parties was to divide all marital property, including those items with a future income stream."

{¶10}    Finally, Mary Jo contended that Rudolph had violated paragraph 12 of the separation agreement which required him to execute a will leaving at least 50 percent of his estate to the parties' children.  She alleged that she had discovered that his estate plan had been changed and that his entire estate would flow into an irrevocable trust, and that the sole beneficiary of that trust was Rudolph's second wife Kathleen for the remainder of her life.  After her death, the residue would pass to Rudolph's children, one-quarter each to his two sons with Mary Jo and one-half to his daughter with Kathleen.  Mary Jo sought to file a third-party complaint against Kathleen and Verderber Services.

4

{¶11} Rudolph filed a motion to dismiss, arguing primarily that the 1981 settlement agreement precluded Mary Jo from seeking further royalties from the sale of *Challenge*, and that *Communicate!* had not been written during the marriage. The trial court overruled the motion to dismiss as it related to the issue of royalties under paragraph 9 of the separation agreement.

{¶12} But the court declined to decide Mary Jo's claim that Rudolph had violated paragraph 12 of the separation agreement because his will did not leave at least 50 percent of his estate to the parties' two children. It found that it did not have jurisdiction to hear the issue. Therefore, it granted Rudolph's motion to dismiss Mary Jo's claims under paragraph 12 of the separation agreement.

{¶13} Finally, the court stated that no dispute existed that the royalties at issue were assigned to Verderber Services and that Kathleen was the only acting officer of that company because of Rudolph's incapacity due to Alzheimer's Disease. Therefore, it granted Mary Jo's motion to join Verderber Services and Kathleen as third-party defendants.

{¶14} Subsequently, Mary Jo filed the third-party complaint against Verderber Services and Kathleen. All three defendants filed a motion for summary judgment on the remaining issues in Mary Jo's motion: (1) the claim for royalties in the motion for contempt, and (2) the motion for relief from judgment under Civ.R. 60(B). Mary Jo filed a motion for partial summary judgment on her claim for failure to pay royalties from *Challenge*.

{¶15} The trial court found that Mary Jo's motion, filed under the catch-all provision of Civ.R. 60(B)(5), could not be used as a substitute for a motion under the more specific provisions of Civ.R. 60(B), which must be brought within one year after the judgment. As to the contempt claim for the failure to pay royalties, the trial court found that "there is no genuine issue of material fact that Husband can be

found in contempt of a provision as to which Wife has released Husband by virtue of the settlement agreement dated January 7, 1981."

{¶16}  Consequently, the court granted the defendants' motion for summary judgment and dismissed Mary Jo's remaining claims against Rudolph.  Because the claims against Verderber Services and Kathleen were derivative of the claims against Rudolph, the court also dismissed the claims against them.  Finally, the court overruled Mary Jo's motion for partial summary judgment.  This appeal followed.

## II.  Motion for Contempt as to the Will Provision of the Separation Agreement

{¶17}  In her first assignment of error, Mary Jo contends that the trial court erred in dismissing her claim for contempt as to paragraph 12 of the separation agreement, which required Rudolph to leave the parties' children 50 percent of his estate.  She argues that the trial court erred in finding that it did not have jurisdiction to decide the issue and that it should have interpreted the agreement like any other contract.  This assignment of error is well taken.

{¶18}  Paragraph 12 of the separation agreement provided that Rudolph would execute a will leaving "no less than 50% of his estate to the children of the parties." In granting the motion to dismiss the contempt proceeding involving paragraph 12, the trial court concluded that if paragraph 12 constituted child support, the court had no jurisdiction to decide the issue.  It relied on cases which stated that in a divorce decree entered before 1974, a support obligation that did not state a specific duration ended for each child upon the child reaching the age of 18. *See Motley v. Motley*, 102 Ohio App.3d 67, 69-71, 656 N.E.2d 995 (9th Dist.1995); *Zweifel v. Price*, 24 Ohio App.3d 101, 102-105, 493 N.E.2d 300 (10th Dist.1985).  It went on to find, "If the sums to be awarded to the parties' sons pursuant to paragraph [12] are not 'support,' this Court has no jurisdiction over said claim.  * * *

[A]s a matter of law, whether paragraph [12] is child support or not, this Court has no jurisdiction to hear it." We disagree.

{¶19} R.C. 3105.011 states that "[t]he court of common pleas including divisions of domestic relations, has full equitable powers and jurisdiction appropriate to the determination of all domestic relations matters." Additionally, R.C. 3105.10(B)(2) states that "[a] separation agreement that was voluntarily entered into by the parties may be enforceable by the court of common pleas upon the motion of either party to the agreement, if the court determines that it would be in the interests of justice and equity to require enforcement of the separation agreement." R.C. 3105.10(B)(3) further states that "[i]f a court of common pleas has a division of domestic relations, all cases brought for enforcement of a separation agreement under division (B)(1) or (2) of this section shall be assigned to the judges of that division."

{¶20} A domestic relations court has the power to "grant complete relief in a matter which is primarily a domestic relations matter." *In re Dunn*, 101 Ohio App.3d 1, 5, 654 N.E.2d 1303 (12th Dist.1995). In this case, the domestic relations court had continuing jurisdiction to enforce the provisions of the separation agreement incorporated into the divorce decree through a post-decree motion for contempt. *See Dvorak v. Dvorak*, 11th Dist. Portage No. 2006-P-0003, 2006-Ohio-6875, ¶ 7; *Mulholland v. Mulholland*, 1st Dist. Hamilton No. C-030931, 2005-Ohio-1196, ¶ 16-17; *Huffman v. Cox*, 10th Dist. Franklin No. 02AP-803, 2003-Ohio-3642, ¶ 36.

{¶21} A separation agreement is a contract between the parties, subject to the same rules of construction that govern other contracts. *Condit v. Condit*, 190 Ohio App.3d 634, 2010-Ohio-5202, 943 N.E.2d 1041, ¶ 11 (1st Dist.). Since the court determined that it did not have jurisdiction over the issue, it never interpreted the contract in the first instance. Consequently, we sustain Mary Jo's first assignment of

error. We remand the matter to the trial court (1) to interpret the separation agreement, (2) to conduct any necessary additional fact-finding, (3) to determine if Rudolph is in violation of paragraph 12 of the separation agreement, and if so, (4) to determine if Rudolph is in contempt in light of its interpretation of the agreement, and, (5) if it finds he is in contempt, to decide the remedy for the contempt. *See State v. Kilbane*, 61 Ohio St.2d 201, 206-207, 400 N.E.2d 386 (1980); *In re Ayer*, 119 Ohio App.3d 571, 577, 695 N.E.2d 1180 (1st Dist.).

### III. Motion for Contempt as to the Royalties Provision of the Separation Agreement

{¶22} We address Mary Jo's remaining assignments of error out of order. In her third assignment of error, she contends that the trial court erred in granting summary judgment in favor of Rudolph on the royalties issue. She argues that summary judgment is improper because Rudolph acknowledged his failure to pay royalties to her and because his excuse for that failure to pay was based on an out-of-court document. In her fourth assignment of error, she argues that the trial court erred as a matter of law by modifying the property division contained in the settlement agreement. In her fifth assignment of error, she contends that the trial court erred in denying her motion for partial summary judgment because Rudolph admitted that he had failed to comply with the court's order in the divorce decree, and that, therefore, the court should have found him in contempt. These assignments of error are not well taken.

{¶23} Generally, the trial court enforces the provisions of a separation agreement incorporated into a divorce decree through a contempt action. *Harris v. Harris*, 58 Ohio St.2d 303, 390 N.E.2d 789 (1979), paragraph one of the syllabus; *Blazic v. Blazic*, 1st Dist. Hamilton Nos. C-040414 and C-040440, 2005-Ohio-4417, ¶ 20. The movant in a contempt proceeding must establish by clear and convincing

evidence that the obligor is in contempt. *Blazic* at ¶ 21. Decisions in contempt proceedings lie within the trial court's discretion. An appellate court will not reverse the trial court's decision absent an abuse of that discretion. *Denovchek v. Bd. of Trumbull Cty. Commrs.*, 36 Ohio St.3d 14, 16, 520 N.E.2d 1362 (1988); *Ayer*, 119 Ohio App.3d at 575, 695 N.E.2d 1180.

{¶24} Civ.R. 75(A) provides that the rules of civil procedure apply in actions for divorce and related proceedings except as modified by that rule. Consequently, "[s]ummary judgment is not prohibited in divorce proceedings." *Zimmie v. Zimmie*, 11 Ohio St.3d 94, 96, 464 N.E.2d 142 (1984). Summary judgment is appropriate if (1) no genuine issue of material fact exists for trial, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, who is entitled to have the evidence construed most strongly in his or her favor. *Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327, 364 N.E.2d 267 (1977); *Greene v. Whiteside*, 181 Ohio App.3d 253, 2009-Ohio-741, 908 N.E.2d 975, ¶ 23 (1st Dist.). We review decisions on summary-judgment motions de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996); *Riverhills Healthcare, Inc. v. Guo*, 1st Dist. Hamilton No. C-100781, 2011-Ohio-4359, ¶ 12.

### IV. The Trial Court Could Consider the 1981 Settlement Agreement

{¶25} Mary Jo first contends that the trial court's decision to grant summary judgment on the royalties issue was improper because the court could not have relied on the 1981 settlement agreement. We disagree.

{¶26} When ruling on a motion for summary judgment, the trial court may only review evidence properly submitted under Civ.R. 56(C). *State ex rel. Boggs v. Springfield Local School Dist. Bd. of Edn.*, 72 Ohio St.3d 94, 97, 647 N.E.2d 788 (1995); *Deutsche Bank Natl. Trust Co. v. Boswell*, 192 Ohio App.3d 374, 2011-Ohio-

673, 949 N.E.2d 96, ¶ 26 (1st Dist.). It provides that a court ruling on a motion for summary judgment may consider "the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact."

{¶27} Civ.R. 56(E) provides the proper procedure for introducing evidentiary matter not specifically authorized by Civ.R. 56(C). It permits other types of evidence if they are properly authenticated and referred to in a properly framed affidavit. *Deutsche Bank* at ¶ 27. It also requires an affidavit to "set forth such facts as would be admissible into evidence." *Tomlinson v. Cincinnati*, 4 Ohio St.3d 66, 67-68, 446 N.E.2d 454 (1983); *Couch v. Bosma*, 1st Dist. Hamilton No. C-960562, 1997 Ohio App. LEXIS 3456, *7-8 (Aug. 1, 1997).

{¶28} The settlement agreement was attached to the affidavit of William Busemeyer, who was Rudolph's attorney when the settlement agreement was signed. He stated that he had negotiated the agreement on Rudolph's behalf and that he had witnessed Rudolph sign the agreement. Busemeyer had also signed the agreement as Rudolph's attorney. Thus, his affidavit was made on personal knowledge, and he was competent to testify to the matters stated in his affidavit as required by Civ.R. 56(E). Further, there was no dispute that Mary Jo had signed the agreement. She admitted to signing it in her answers to interrogatories filed with the court and in the pleadings. Therefore, the agreement was properly before the court.

{¶29} Next, Mary Jo argues that the trial court should not have granted summary judgment based upon the 1981 settlement agreement because Rudolph could not use it to collaterally attack or modify the divorce decree when it was never made an order of the court. We agree that because the 1981 agreement was not made an order of the court, it cannot be enforced in contempt.

{¶30}   The agreement did not modify the parties' property division.  Instead it compromised and settled the issues raised in Mary Joe's 1979 motion for contempt.  In that agreement, she released all claims against Rudolph related to paragraph 9 of the separation agreement. But the agreement was a valid contract between the parties, and Rudolph presented it, and the trial court properly considered it, as a defense to Mary Joe's contempt motion.

### *V.   The Settlement Agreement was Clear and Unambiguous*

{¶31}   The settlement agreement, like the separation agreement, is a contract subject to the same rules of interpretation as other contracts.   Its interpretation is generally a matter of law and the court's primary objective is to give effect to the parties' intent, which can be found in the language they have chosen to employ.  *Foster Wheeler Enviresponse, Inc. v. Franklin Cty. Convention Facilities Auth.*, 78 Ohio St.3d 353, 361, 678 N.E.2d 519 (1997); *Condit*, 190 Ohio App.3d 634, 2010-Ohio-5202, 943 N.E.2d 1041, at ¶ 11.  The writing will be read as a whole, and the intent of each part will be gathered from a consideration of the whole.  *Foster Wheeler* at 351; *M.G.A., Inc. v. Amelia Station, Ltd.*, 1st Dist. Hamilton No. C-010606, 2002-Ohio-5091, ¶ 10.  If the terms of an agreement are unambiguous, a court must give the terms their plain, ordinary meanings, and it need not go beyond the plain language of the agreement to determine the parties' rights and obligations.  *Aultman Hosp. Assn. v. Community Mut. Ins. Co.*, 46 Ohio St.3d 51, 53, 544 N.E.2d 920 (1989); *Condit*, 190 Ohio App.3d 634, 2010-Ohio-5202, 943 N.E.2d 1041, at ¶ 11.

{¶32}   The settlement agreement stated that in exchange for a lump-sum payment of $40,000 from Rudolph, Mary Jo agreed "to dismiss with prejudice the pending court action against Rudolph F. Verderber for contempt of court, for failure to make payments under Section nine (9) of the Separation Agreement incorporated into the Decree of Divorce between the parties[.]"  She further agreed to "release

Rudolph F. Verderber from any obligation under said Section nine (9)." Finally, the agreement stated that "[s]ave and except as to the matters contained in this Agreement, each of the parties do hereby forever release the other from any and all claims, liabilities, causes of action, and all of the covenants, terms, conditions, obligations as set forth or arising out of in [sic] Section nine (9) of the aforesaid Separation Agreement."

{¶33}   The terms of the agreement are unambiguous.  In exchange for a payment of $40,000, Mary Jo agreed to release Rudolph from all claims under paragraph 9 of the separation agreement.  Consequently, after that time, Rudolph had no obligation to pay Mary Jo any more royalties.  Mary Jo has failed to establish by clear and convincing evidence that Rudolph was in contempt.  *See Blazic*, 2005-Ohio-4417, at ¶ 20.  Rudolph was entitled to judgment as a matter of law, and the trial court did not err in granting summary judgment in his favor.  We overrule Mary Jo's third, fourth and fifth assignments of error.

### VI.   Civ.R. 60(B) Motion

{¶34}   In her sixth assignment of error, Mary Jo contends that the trial court erred in overruling her Civ.R. 60(B)(5) motion for relief from judgment.  She argues that her motion was properly filed under Civ.R. 60(B)(5) because she showed that Rudolph had concealed marital property and that she had filed her motion within a reasonable time of discovering that concealment.  This assignment of error is not well taken.

{¶35}   To prevail on a Civ.R. 60(B) motion for relief from judgment, the moving party bears the burden to demonstrate that (1) the party has a meritorious defense or claim to present if relief is granted; (2) the party is entitled to relief under one of the grounds stated in Civ.R. 60(B)(1) through (5); and the motion is timely made.  *GTE Automatic Elec., Inc. v. ARC Industries, Inc.*, 47 Ohio St.2d 146, 351

N.E.2d 113 (1976), paragraph two of the syllabus; *W2 Prop., LLC v. Haboush*, 196 Ohio App.3d 194, 2011-Ohio-4231, 962 N.E.2d 858, ¶ 21 (1st Dist.). The decision whether to grant relief from judgment lies within the trial court's discretion. *Rose Chevrolet, Inc. v. Adams*, 36 Ohio St.3d 17, 20, 520 N.E.2d 564 (1988); *W2 Prop.* at ¶ 21.

{¶36} Mary Jo filed her motion under Civ.R. 60(B)(5), which allows a court to set aside a judgment for "any other reason justifying relief from judgment." Civ.R. 60(B)(5) is intended as a catch-all provision to relieve a person from the unjust operation of a judgment. But the grounds for invoking that provision must be substantial, and it cannot be used as substitute for any of the more specific provisions of Civ.R. 60(B). *Caruso-Ciresi, Inc. v. Lohman*, 5 Ohio St.3d 64, 448 N.E.2d 1365 (1983), paragraphs one and two of the syllabus; *W2 Prop.* at ¶ 27.

{¶37} In her motion, Mary Jo sought relief from the divorce decree incorporating the separation agreement. Under paragraph 9 of the agreement, she was entitled to one-third of the royalties from *Challenge*. She alleged that in March of 2011, she had discovered that *Communicate!*, Rudolph's follow-up to *Challenge*, had been written during the marriage. She claimed that Rudolph had failed to disclose *Communicate!* as marital property, had prevented her from discovering it, and had denied her the right to one-third of royalties from *Communicate!*.

{¶38} Mary Jo relies on this court's decision in *In re Murphy*, 10 Ohio App.3d 134, 461 N.E.2d 910 (1st Dist.1983) in arguing that her motion for relief from judgment was proper under Civ.R. 60(B)(5). In that case, we held that a party to a dissolution could attack the decree under Civ.R. 60(B)(5) when numerous marital assets were omitted from the decree. *Id.* at 137-138. We stated that "[t]he fatal defect is noncompliance with the empowering statute, and the 'reason' for invoking the trial court's discretionary power to grant relief falls in clause (5)." *Id.* at 138.

{¶39}   We later distinguished *Murphy* in *Miller v. Miller*, 1st Dist. Hamilton No. C-980892, 1999 Ohio App. LEXIS 4313 (Sept. 17, 1999).   In that case, we stated that although the parties had agreed to the property division, it involved a divorce not a dissolution, "which was an integral part of our decision[.]"  *Id.* at *7.  "While an agreement is an essential statutory element allowing the court to grant a decree of dissolution, it is not required in a divorce case where the court may decide the property division and other issues."  *Id.* at *7-8.  *Accord Boston v. Parks-Boston*, 10th Dist. Franklin No. 02AP-1031, 2003-Ohio-5267, ¶ 29.

{¶40}   Further, Mary Jo failed to present evidence, other than her own speculation, showing that *Communicate!* had existed in any form prior to the end of marriage.   Rudolph, on the other hand, presented substantial evidence that *Communicate!* did not exist at the time of the separation agreement or divorce decree.  The contract to write the book was not signed until months after the divorce decree and stated that "[t]he Author *will* write for publication a work on basic communication."  (Emphasis added.)  Consequently, it was not an undisclosed asset. *Murphy* is not dispositive, and Civ.R. 60(B)(5) does not apply.

{¶41}   Mary Jo is really arguing that Rudolph defrauded her.  Therefore, she should have brought her motion under the more specific provision in Civ.R. 60(B)(3) for fraud.  She points out that the trial court mistakenly stated that she had claimed that Rudolph had defrauded her regarding *Challenge*, but she had argued that he had defrauded her regarding the time of authorship of *Communicate!.*   Even so, Mary Jo is still arguing fraud by Rudolph.

{¶42}   Mary Jo has not alleged that Rudolph's attorney or anyone connected to the court had knowledge of the alleged fraud.   A court can grant relief from judgment under Civ.R. 60(B)(5) for fraud on the court.  Civ.R. 60(B)(3) applies to fraud by an adverse party. *Coulson v. Coulson*, 5 Ohio St.3d 12, 15, 448 N.E.2d 809

(1983); *Miller*, 1999 Ohio App. LEXIS 4313 at *8. Consequently, Mary Jo should have sought relief from judgment under Civ.R. 60(B)(3), since she alleged fraud by an adverse party, not fraud on the court.

{¶43} A motion seeking relief from judgment under Civ.R. 60(B)(3), unlike Civ.R. 60(B)(5), must be filed within one year of the entry of judgment. *Strack v. Pelton*, 70 Ohio St.3d 172, 175, 637 N.E.2d 914 (1994); *In re Crabtree*, 1st Dist. Hamilton No. C-010290, 2002 Ohio App. LEXIS 1156, *9 (Mar. 15, 2002). Since Mary Jo's motion was not filed within one year of the divorce decree, it was not timely filed. She argues that it was filed within one year of her discovery of the fraud. She has not cited any authority and we find none that apply a "discovery rule" to the express one-year deadline set forth in Civ.R. 60(B)(3). *See In re Alexander*, 92 Ohio App.3d 190, 202, 634 N.E.2d 670 (8th Dist.1993).

{¶44} Further, to have a claim under Civ.R. 60(B)(3), the adverse party must have prevented the complaining party from fully and fairly presenting his or her claim or defense. *U.S. Bank Natl. Assn. v. Marino*, 5th Dist. Delaware No. 2001CAE11 0108, 2012-Ohio-1487, ¶ 15; *Hardman v. Chiaramonte*, 39 Ohio App.3d 9, 11, 528 N.E.2d 1270 (9th Dist.1987). The party asserting fraud has the burden of proving it by clear and convincing evidence. *U.S. Bank* at ¶ 15; *Hardman* at 11.

{¶45} We agree with the trial court when it stated:

Wife has not asserted that Husband herein prevented her from having a fair opportunity to litigate her claim to royalties. She participated in litigation concerning royalties in the period 1979-1981 with the assistance of counsel, and had the opportunity to pursue discovery. If she chose not to do so thoroughly, that is not Husband's fault.

{¶46} Consequently, we hold that the trial court did not err in denying Mary Jo's Civ.R. 60(B) motion. We overrule her sixth assignment of error.

### VII. Constructive Trust

{¶47}   In her second assignment of error, Mary Jo contends that the trial court erred in denying her motion for a constructive trust.  She argues that paragraph 9 of the separation agreement relating to royalties created a trust relationship where Rudolph held her entitlement to royalties for her benefit with a duty to annually provide an account and a distribution.  This assignment of error is not well taken.

{¶48}   A constructive trust is "a trust by operation of law which arises * * * against one who, by fraud, actual or constructive, by duress or abuse of confidence * * * or who in any way against equity and good conscience, either has obtained or holds the legal right to property which he ought not, in equity and good conscience hold and enjoy."  *Cundall v. U.S. Bank*, 122 Ohio St.3d 188, 2009-Ohio-2523, 909 N.E.2d 1244, ¶ 39, quoting *Estate of Cowling v. Estate of Cowling*, 109 Ohio St.3d 276, 2006-Ohio-2418, 847 N.E.2d 405, ¶ 18.  It is an appropriate remedy against unjust enrichment.  It is usually invoked when property has been acquired by fraud, but may also be used when it is inequitable that the property be retained by a certain person even if it was not acquired by fraud.  *Ferguson v. Owens*, 9 Ohio St.3d 223, 226, 459 N.E.2d 1293 (1984).

{¶49}   In this case, the record does not show that Rudolph had acquired or retained property under inequitable or improper circumstances.  He and Mary Jo reached an agreement in 1981 in which Mary Jo released her share of the royalties in exchange for valid consideration.  The parties negotiated the agreement with the advice of counsel.  Thirty years later, she is raising arguments that were available to her in 1981.  Under the circumstances, we cannot hold that the trial court erred in failing to impose a constructive trust, and we overrule her second assignment of error.

### VIII. Claims against Third Parties

{¶50} Finally, in her seventh assignment of error, Mary Jo contends that the trial court erred in dismissing her claims against Verderber Services and Kathleen. Under Civ.R. 75(B), a third party may be joined as a defendant if that party possesses, controls, or claims an interest in property at issue in a divorce action. *Davis v. Cincinnati Enquirer*, 164 Ohio App.3d 36, 2005-Ohio-5719, 840 N.E.2d 1150, ¶ 14 (1st Dist.); *Chrisman v. Chrisman*, 12th Dist. Warren No. CA99-01-006, 2000 Ohio App. LEXIS 937, *5 (Mar. 13, 2000).

{¶51} Kathleen and Verderber Services were properly joined as parties since they allegedly held the royalties to which Mary Jo claimed she was entitled. But since she is not entitled to any of those royalties, her claims against them were properly dismissed. Accordingly, we overrule Mary Jo's seventh assignment of error.

### IX. Summary

{¶52} In sum, we reverse that part of the trial court's decision overruling Mary Jo's motion for contempt as it related to paragraph 9 of the separation agreement, the will provision, and we remand the cause to the trial court to interpret that provision, to determine if Rudolph is in contempt, and, if it finds he is in contempt, to decide the remedy for contempt. We affirm the trial court's judgment in all other respects.

Judgment affirmed in part, reversed in part, and cause remanded.

**CUNNINGHAM, P.J.,** and **DEWINE, J.,** concur.

Please note:
The court has recorded its own entry this date.