[Cite as *Natl. Collegiate Student Loan Trust-1 v. Payne*, 2022-Ohio-2636.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

National Collegiate Student Loan
Trust-1,

        Plaintiff-Appellee,

v.

Kimberly Payne,

        Defendant-Appellant.

:

:

:

:

:

:

:

No. 21AP-628

(C.P.C. No. 17CV-5860)

(REGULAR CALENDAR)

---

D E C I S I O N

Rendered on August 2, 2022

---

**On brief**: *Sessions Israel & Shartle, LLC*, and *Justin H. Homes*; *Bradley Joseph St. Angelo*, pro hac vice, for appellee. **Argued**: *Bradley Joseph St. Angelo*.

**On brief**: *Dann Law*, *Emily White*, and *Marc E. Dann*, for appellant. **Argued**: *Emily White*.

---

APPEAL from the Franklin County Court of Common Pleas

McGRATH, J.

{¶ 1} This is an appeal by defendant-appellant, Kimberly Payne, from a judgment of the Franklin County Court of Common Pleas overruling appellant's objections to a magistrate's decision and denying her motion to set aside judgment.

{¶ 2} A portion of the following background facts are taken from this court's decision in *NTL Collegiate Student Loan Trust-1, A Delaware Statutory Trust v. Payne*, 10th Dist. No. 18AP-973, 2020-Ohio-3553. On November 1, 2002, appellant, "an Ohio resident, applied for a student loan with Bank One, N.A., to attend Capital University in Columbus, Ohio." Appellant signed a promissory note, and "the loan was disbursed" on November 26, 2002. Prior to default, the loan was serviced by American Education

Services ("AES"), a student loan provider located in Pennsylvania. On February 19, 2003, plaintiff-appellee, National Collegiate Student Loan Trust-1 ("National Collegiate"), "a Delaware Statutory Trust, acquired the loan while the loan was in deferment." *Id.* at ¶ 2.

{¶ 3} In October 2007, the loan "entered repayment status," and "regular payments were made until 2012, excluding five periods of temporary deferment/forbearance." The "last regular payment" was received on September 3, 2012, and "[t]he account was charged off November 1, 2012." After the loan was "charged off, or designated as unrecoverable, several post-default payments were applied toward interest." Following default, "the loan was sent to a collection agency for two years in an attempt to collect the loan." On November 3, 2014, Transworld Systems, Inc. ("Transworld") "became the default servicer and custodian of records." *Id.* at ¶ 3.

{¶ 4} On June 30, 2017, National Collegiate filed a collection action against appellant, alleging she was in default on the student loan agreement in the amount of $28,389.78. On July 24, 2018, a magistrate of the trial court conducted a bench trial on the matter. The sole witness called by National Collegiate at trial was James H. Cummins, a Transworld employee; counsel for appellant did not call any witnesses.

{¶ 5} On August 22, 2018, the magistrate rendered a decision finding in favor of National Collegiate in the amount of $28,721.86, "with post-judgment interest plus court costs." *Id.* at ¶ 5. Appellant filed objections to the magistrate's decision, which the trial court overruled. On December 10, 2018, the trial court filed a judgment entry adopting the magistrate's decision and ordering judgment in favor of National Collegiate.

{¶ 6} Appellant appealed the trial court's judgment, raising three assignments of error in which she asserted: (1) the trial court erred in holding the action was not time barred, (2) the evidence at trial was insufficient to demonstrate standing and the judgment was against the manifest weight of the evidence, and (3) the trial court erred in admitting and relying on hearsay evidence. In *Payne*, this court overruled all of appellant's assignments of error and affirmed the judgment of the trial court. Appellant subsequently filed a motion to certify a conflict, which this court denied by memorandum decision filed August 6, 2020.

{¶ 7} On January 14, 2021, appellant filed with the trial court a motion to set aside judgment pursuant to Civ.R. 60(B)(3) and (5). In the accompanying memorandum in support, appellant argued National Collegiate offered testimony and evidence "it knew to

be false" at the bench trial before the magistrate in 2018. (Appellant's Mot. to Set Aside Jgmt. at 2.) Appellant's argument centered on the testimony of Cummins, the sole witness during the 2018 bench trial, as well as appellant's reliance on the import of a 2017 consent order ("Consent Order") entered in an administrative proceeding before the Consumer Financial Protection Bureau ("CFPB").

{¶ 8} The Consent Order, arising out of an administrative enforcement action by CFPB against Transworld, was addressed in this court's prior decision in which we noted that appellant, during the 2018 bench trial, sought to impeach Cummins in part based on a Consent Order from CFPB, a "document * * * signed on September 14, 2017." We observed that, "although Transworld did not admit to any negative conduct, the consent order acknowledged that Transworld, while collecting loans on behalf of National Collegiate, filed affidavits that falsely claimed personal knowledge of account records and consumer debt, and in many cases, personal knowledge of the chain of assignments establishing ownership of the loans." We further noted "[t]he time period involved in the consent order involved lawsuits filed between November 1, 2014 and April 25, 2016, and this case was not filed until June 30, 2017." *Payne* at ¶ 33.

{¶ 9} In her motion to set aside judgment, appellant argued that Cummins, in connection with the litigation in the CFPB proceedings involving Transworld, had executed an affidavit in January 2020 in which he made admissions that factual allegations in the CFPB Consent Order were true.[1] More specifically, appellant argued that Cummins, who was fired by Transworld on August 2, 2018, "recently admitted that he testified in court without personal knowledge of the documents he was presenting, despite his sworn testimony at trial to the contrary." According to appellant, "[t]his admission directly contradicts Mr. Cummins' testimony at trial and the representations by Plaintiff through counsel that the admissions contained in the CFPB Consent Order were unrelated to Mr. Cummins." (Appellant's Mot. to Set Aside Jgmt. at 6.)

{¶ 10} On February 18, 2021, National Collegiate filed a memorandum in opposition to appellant's motion to set aside judgment, asserting that Cummins' affidavit "does not admit" he gave false testimony at appellant's trial and does not contradict Cummins'

---

[1] Attached to appellant's motion to vacate was the affidavit of James H. Cummins, dated January 6, 2020, and identified as part of the "ADMINISTRATIVE PROCEEDING file" before the CFPB in "2017-CFPB-0018." (Cummins' Aff. at 1.)

assertions of personal knowledge of appellant's loan records. (National Collegiate's Memo. in Opp. at 2.) National Collegiate argued that the Consent Order was irrelevant to the instant action, as it "concerns lawsuits filed between November 1, 2014 and April 25, 2016," when Transworld "initially assumed its role as Special Subservicer." *Id.* at 3. National Collegiate further argued that averments in Cummins' affidavit indicate he was not one of the unnamed witnesses described in the Consent Order as having testified without personal knowledge.

{¶ 11} On March 11, 2021, the magistrate who presided over the 2018 bench trial conducted a hearing on appellant's motion to set aside judgment; during that hearing, counsel for the parties presented oral arguments, and Cummins' affidavit (previously attached to appellant's motion to vacate) was accepted into evidence at the request of appellant's counsel.

{¶ 12} Also on March 11, 2021, the magistrate issued a decision denying appellant's motion. In addressing whether relief from judgment was appropriate under one of the grounds set forth in Civ.R. 60(B), the magistrate deemed the dispositive issue to be whether Cummins' affidavit, executed January 6, 2020, supported appellant's argument that Cummins lied to the court during the 2018 trial. Upon review of the affidavit, the magistrate concluded appellant "has not shown a prior fraud upon the court," and that "the affidavit of Mr. Cummins is not an admission that he lied during the 2018 trial." (Mar. 11, 2021 Mag.'s Decision at 7.) The magistrate therefore held appellant had failed to establish a right to relief under either Civ.R. 60(B)(3) or (5).

{¶ 13} On March 25, 2021, appellant filed objections to the magistrate's decision. By decision and entry filed November 2, 2021, the trial court overruled appellant's objections, adopted the decision of the magistrate, and denied appellant's motion to set aside judgment.

{¶ 14} On appeal, appellant sets forth the following assignment of error for this court's review:

> THE TRIAL COURT ERRED IN DENYING THE MOTION TO
> VACATE JUDGMENT.

{¶ 15} Under her single assignment of error, appellant asserts the trial court erred in concluding she was not entitled to relief from judgment for fraud under Civ.R. 60(B)(3) and (5). Appellant contends the underlying judgment was procured by false testimony from

Cummins who, subsequent to the 2018 bench trial, submitted a sworn statement in a federal administrative proceeding indicating the training he received from his then-employer, Transworld, was inadequate to develop accurate trial testimony.

{¶ 16} Under Ohio law, " '[a] motion for relief from judgment under Civ.R. 60(B) is addressed to the sound discretion of the trial court, and that court's ruling will not be disturbed on appeal absent a showing of abuse of discretion.' " *Village at Gender Condominium Assn. v. JHM Rental Mgt., L.L.C.*, 10th Dist. No. 19AP-834, 2021-Ohio-3216, ¶ 8, quoting *Griffey v. Rajan*, 33 Ohio St.3d 75, 77 (1987). In "applying the abuse of discretion standard, an appellate court may not substitute its judgment for that of the trial court." *Id.*, citing *Star Merchandise, L.L.C. v. Haehn*, 10th Dist. No. 16AP-39, 2016-Ohio-8018, ¶ 11.

{¶ 17} In order to prevail on a motion for relief from judgment under Civ.R. 60(B), a movant must demonstrate that: "(1) the party has a meritorious defense or claim to present if relief is granted; (2) the party is entitled to relief under one of the grounds stated in Civ.R. 60(B)(1) through (5); and (3) the motion is made within a reasonable time, and, where the grounds of relief are Civ.R. 60(B)(1), (2) or (3), not more than one year after the judgment, order or proceeding was entered or taken." *GTE Automatic Elec., Inc. v. ARC Industries, Inc.*, 47 Ohio St.2d 146 (1976), paragraph two of the syllabus. The *GTE* requirements "are independent and in the conjunctive; thus the test is not fulfilled if any one of the requirements is not met." *Strack v. Pelton,* 70 Ohio St.3d 172, 174 (1994), citing *GTE Automatic* at 151.

{¶ 18} As noted, appellant brought her motion pursuant to Civ.R. 60(B)(3) and (5), based on her claim of false testimony by Cummins during the 2018 trial. In general, Civ.R. 60(B)(3) "applies to fraud by an adverse party," while Civ.R. 60(B)(5) permits a court to grant relief from judgment "for fraud on the court." *Kell v. Verderber*, 1st Dist. No. C-120665, 2013-Ohio-4223, ¶ 42. In order to obtain relief from judgment based on fraud, "the movant must establish fraud by clear and convincing evidence." *Hamlin v. Kirby*, 4th Dist. No. 15CA7, 2015-Ohio-4994, ¶ 16, citing *Ratliff-Wooten v. Wooten*, 4th Dist. No. 00CA1 (Dec. 18, 2000); *Still v. Still*, 4th Dist. No. 95CA15 (June 25, 1996). *See also Kell* at ¶ 44, citing *U.S. Bank Natl. Assn. v. Marino*, 5th Dist. No. 2011CAE11 0108, 2012-Ohio-1487, ¶ 15 ("[T]he party asserting fraud and misrepresentation has the burden of proving it by clear and convincing evidence.").

{¶ 19} In *Luke v. Roubanes*, 10th Dist. No. 16AP-766, 2018-Ohio-1065, ¶ 23, this court discussed the distinction between fraud upon a party (as a basis for relief under Civ.R. 60(B)(3)) and fraud upon the court (as a basis for relief under Civ.R (B)(5)), noting that "[t]echnically, any fraud connected with the presentation of a case to a court could constitute fraud upon the court in a broad sense," but cautioning that "courts cannot invoke Civ.R. 60(B)(5) when any of the more specific provisions of Civ.R. 60(B) apply." In this respect, Civ.R. 60(B)(3), which "permits relief from judgment in cases of fraud, misrepresentation, and other misconduct by an adverse party[,] * * * applies when an adverse party's fraud, misrepresentation, or misconduct in obtaining a judgment has prevented the other party from fully and fairly presenting its case." *Id.*, citing *Bank of Am., N.A. v. Kuchta*, 141 Ohio St.3d 75, 2014-Ohio-4275, ¶ 13; *PNC Bank, N.A. v. Botts*, 10th Dist. No. 12AP-256, 2012-Ohio-5383, ¶ 15. By way of example, " '[f]raud on an adverse party may exist when * * * a party presents material false testimony at trial, and the falsity is not discovered until after the trial.' " *Roubanes* at ¶ 23, quoting *Botts* at ¶ 15.

{¶ 20} Courts "narrowly construe fraud upon the court in order to prevent it from overwhelming Civ.R. 60(B)(3)." *Roubanes* at ¶ 23. In light of this "narrow construction, in the usual case, fraud in the presentation of evidence amounts to fraud upon a party," and "[f]alse testimony and the withholding of evidence generally fall within Civ.R. 60(B)(3), not Civ.R. 60(B)(5)." *Id.* at ¶ 24. Thus, " '[t]he possibility of perjury, even concerted, is a common hazard of the adversary process with which litigants are equipped to deal through discovery and cross-examination, and, where warranted, [a Civ.R. 60(B)(3)] motion for relief from judgment.' " *Id.*, quoting *Geo. P. Reintjes Co. v. Riley Stoker Corp.*, 71 F.3d 44, 49 (1st Cir.1995). By contrast, "[f]raud upon the court is limited to the more egregious forms of subversion of the legal process, which a court cannot necessarily expect to be exposed by the normal adversary process." *Id.*

{¶ 21} At issue in this appeal is whether the trial court abused its discretion in adopting the magistrate's determination that the January 2020 Cummins' affidavit, submitted in an administrative proceeding before CFPB, failed to establish that National Collegiate, in the underlying 2018 bench trial, engaged in fraud that would warrant relief under Civ.R. 60(B)(3) or (5). As outlined under the facts above, the administrative proceeding before CFPB involved allegations against Transworld resulting in a Consent

Order rendered in September 2017.  (*See In re Transworld Systems, Inc.*, File No. 2017-CFPB-0018).

{¶ 22} The Consent Order arose "[i]n connection with" lawsuits initiated by law firms (hired by Transworld) "collecting or attempting to collect Debt from Consumers, between November 1, 2014 and April 25, 2016." Consent Order at ¶ 15.  The Consent Order stated in part: "In support of the Collection Lawsuits, Law Firms submitted Affidavits executed by [Transworld] and documents in support of the Trusts' claims that Consumers owed Debts to a Trust."  *Id*. at ¶ 16.  With respect to "these Affidavits, the Affiants swore that they had personal knowledge of the education loan records evidencing the Debt" when, "[i]n fact, in numerous instances, Affiants lacked personal knowledge of the education loan records evidencing the Debt when they executed the Affidavits."  *Id*. at ¶ 18.

{¶ 23} The Consent Order further recited in part: (1) "In some cases, Affiants did not possess the chain of title records" or "review the chain of title records prior to executing the Affidavits"; (2) in "numerous instances, Affiants lacked personal knowledge of the chain of assignment records necessary to prove that the relevant Trust owned the subject loans"; and (3) in "some instances, certain Affiants complained to supervisors that they did not have personal knowledge of the representations made in the Affidavits," but "[t]hese [A]ffiants continued to execute Affidavits * * * for fear of losing their jobs." *Id*. at ¶ 21, 22, 23.

{¶ 24} As part of the administrative proceeding before CFPB, Cummins submitted an affidavit, dated January 6, 2020, stating in part that he was employed by Transworld "from February 2, 2015 until August 2, 2018 as a Legal Case Manager/Legal Account Specialist," and that his duties "included reviewing the records of the National Collegiate Student Loan Trusts * * * in order to accurately execute affidavits, respond to Discovery requests, and prepare for Trial testimony as a custodian of records." (Cummins' Aff. at ¶ 2.)

{¶ 25} Cummins averred that, when he arrived at Transworld, "the deficiencies described in paragraphs 21 through 24 of the Consent Order existed," and that "[t]hose deficiencies still existed when I was fired on August 2, 2018, despite the new online affidavit training that was provided." Cummins stated that "[t]he deficiencies described in paragraphs 21 through 24 of the Consent Order created a hostile, frustrating, and toxic work environment," and that "[t]he training was inadequate to accurately execute an affidavit or develop accurate trial testimony."  *Id*. at ¶ 4, 5.

{¶ 26} Cummins further averred in his affidavit: "It is critical to note that, after reviewing hundreds of files during my employment, I did not find any errors or missing documents in the records of the Trusts, including American Education Services." According to the affidavit, "[t]he deficiencies cited in the Consent Order * * * are due to [Transworld's] inability/refusal to effectively train its staff and the resulting high rate of staff turnover." *Id.* at ¶ 11.

{¶ 27} The magistrate, in examining the subject affidavit which was offered into evidence by appellant at the Civ.R. 60(B) hearing, agreed with National Collegiate's contention that Cummins never admitted to perjuring himself. The magistrate also addressed and found unpersuasive appellant's argument that the proper inference from reading the affidavit was that Cummins was not properly trained, and therefore could not have had personal knowledge to support his testimony during the 2018 bench trial.

{¶ 28} The magistrate cited to portions of the affidavit as establishing Cummins' "professionalism," noting the affiant "specifically stated" that his job duties included a review of the records of National Collegiate's student loan trusts "in order to accurately execute affidavits * * * and prepare for Trial Testimony as a custodian of records." (Mar. 11, 2021 Mag.'s Decision at 6.) Further, in considering the affidavit "in total," the magistrate construed the statements of Cummins as follows:

> * * * Mr. Cummins acknowledged that he was aware that others were not getting the proper training they should get; he felt belittled by the training referring to it as "hazing" the inference being that he did not need the training; that members of Plaintiff's management were not listening to his attempts to make things better; that Mr. Cummins was trying to get better training and processes in place for others; that Mr. Cummins was unwilling to testify if he was not sure of the evidence the Plaintiff was giving him; and that Mr. Cummins was fired because of his unwillingness to put forth "false or incorrect documents with an affidavit or at trial."

(Mar. 11, 2021 Mag.'s Decision at 6-7.)

{¶ 29} Based on the arguments and evidence submitted at the motion hearing, the magistrate deemed it "clear" that appellant "has not shown a fraud upon the court," finding the affidavit did not present credible evidence Cummins "lied during the 2018 [bench]

trial." *Id.* at 7. The magistrate thus concluded appellant had failed to establish a right to relief under Civ.R. 60(B)(3) and (5).

{¶ 30} In addressing appellant's objections to the magistrate's decision, the trial court found no error by the magistrate in concluding the affidavit "fails to establish fraud as contemplated in Civ.R. 60(B)(3)." Specifically, the trial court noted the affidavit "was prepared as part of an administrative proceeding," and that "[i]t was not prepared for, nor did it reference, this specific case or trial." Further, the court observed, "[n]owhere in the affidavit does * * * Cummins state that he provided false testimony in this case." (Nov. 2, 2021 Decision & Entry at 6.) The trial court also referenced Cummins' averment that "he notified his supervisors that he would not make any trial appearances or put forth documents he believed were false or incorrect," and the court cited Cummins' affidavit statement that, " 'after reviewing hundreds of file[s] during my employment, I did not find any errors or missing documents in the records of the Trusts.' " *Id.*, quoting Cummins' Affidavit at ¶ 11. The trial court therefore reached the same conclusion as the magistrate that the affidavit "does not demonstrate [Cummins'] testimony was false in the 2018 trial." *Id.*

{¶ 31} The trial court also determined that Civ.R. 60(B)(5) did not provide a basis for relief, concluding that appellant's "own argument does not support a finding that [National Collegiate's] counsel actively participated in defrauding the court." *Id.* at 5.

{¶ 32} Upon review, we find no abuse of discretion by the trial court in its determination that appellant was not entitled to relief under Civ.R. 60(B)(3) or (5). At the outset, and as noted under the facts, the Consent Order, referenced in Cummins' 2020 affidavit, was introduced at the 2018 trial. As this court previously observed in appellant's direct appeal, appellant offered the Consent Order as Exhibit B "in an effort to impeach Cummins and challenge his credibility." *Payne* at ¶ 33. We further noted that, while "[t]he time period involved in the consent order involved lawsuits filed between November 1, 2014 and April 25, 2016," the instant case "was not filed [by appellant] until June 30, 2017." *Id.*

{¶ 33} Upon admission of the Consent Order during the 2018 bench trial, the magistrate indicated he would "accept it to potentially impeach [Cummins'] credibility," and would "review the documentation to determine whether or not there's anything so on point that I can't find Mr. Cummins' testimony today credible." (July 24, 2018 Tr. at 97.) Thus, the magistrate was aware of the administrative enforcement action and allegations

against Cummins' then-employer (Transworld), and the magistrate reviewed the Consent Order for purposes of credibility determination.

{¶ 34} This court's prior decision also set forth in detail Cummins' trial testimony in which he "explained the process of how National Collegiate acquired appellant's loan." *Payne* at ¶ 25. Exhibits introduced by National Collegiate during the 2018 trial included "the loan application/promissory note (Exhibit 1); a document demonstrating that Transworld was the servicer and custodian of the records for the trust * * * (Exhibit 2); [a] pool supplement document, including three pages of information related specifically to appellant's loan * * * (Exhibit 3); the payment history of the loan (Exhibit 4); a history of the deferments/forbearance (Exhibit 5); a record of the monthly repayment amounts (Exhibit 6); and a report of the loan payment history * * * (Exhibit 7)." *Id.* at ¶ 26. During trial, counsel for appellant cross-examined Cummins regarding the various documents. On direct appeal, we addressed and rejected appellant's contention that Cummins did not have sufficient personal knowledge to authenticate the records regarding appellant's loan, noting that Cummins "explained how the records were created, stored, how he retrieved them, and made copies of the originals." *Id.* at ¶ 45.

{¶ 35} Following our decision in *Payne,* appellant brought her Civ.R. 60(B) motion before the trial court asserting that, based on Cummins' affidavit submitted as part of the administrative proceedings before CFPB, "Cummins recently admitted that he testified in court without personal knowledge of the documents he was presenting, despite his sworn testimony at trial to the contrary." (Appellant's Mot. to Set Aside Jgmt. at 6.) A review of Cummins' affidavit does not support that assertion.

{¶ 36} Rather, as found by the trial court and magistrate, Cummins' affidavit reveals no admission relating to the 2018 bench trial (nor does the affidavit contain an admission by Cummins that he personally provided false or misleading trial testimony while employed on behalf of Transworld). A fair reading of the affidavit, as found by the magistrate, is that while Cummins was aware that other Transworld employees were not receiving adequate training, Cummins himself did not believe he lacked proper training, nor was he willing to provide false or misleading documents with respect to his own trial testimony.

{¶ 37} Regarding the issue of training, Cummins stated in his affidavit that "[s]everal" legal case managers at Transworld described the training for trial as "confusing, off the wall, and mean-spirited." (Cummins' Aff. at ¶ 6.) Cummins "objected to this training

as a 'hazing ritual' to [the director] to whom I reported," but he was "later advised * * * that the training was required for all [legal case managers] and that I would have to participate." *Id.* Cummins expressed concern that "[a]ll the essential information required to prevail at Trial was completely left out of Trial witness training." *Id.* at ¶ 7. According to Cummins, after explaining to his superiors the lack of "effective affidavit training," he was asked (subsequent to the 2017 Consent Order) "to revise the affidavit training procedure to eliminate the deficiencies cited in the Consent Order and I agreed." Cummins, in fact, "revised the affidavit training procedure," but "never received any feedback and none of the revisions were included in the post Consent Order procedure." *Id.* at ¶ 9.

{¶ 38} Appellant cites to Cummins' statement that the deficiencies that were part of the subject Consent Order (i.e., including inadequate training) still existed when he was fired. As recognized by the magistrate, appellant seeks to infer, based on Cummins' statements that Transworld employees received inadequate training, that Cummins himself could not have testified based on personal knowledge of the loan documents at the 2018 bench trial (i.e., the inference being that as "an untrained witness his testimony in 2018 was therefore fraudulent"). (Mar. 11, 2021 Mag.'s Decision at 6.) On the facts presented, however, the inference appellant seeks to draw is speculative and unsupported. The affidavit does not suggest Cummins believed he was unable to provide competent testimony (i.e., Cummins does not state that deficiencies in the training affected his trial testimony). Nor does Cummins' statement as to existing deficiencies contradict his further averment regarding his own involvement in testifying on behalf of Transworld; specifically, his representation that, "after reviewing hundreds of files during my employment, I did not find any errors or missing documents in the records of the Trusts." (Cummins' Aff. at ¶ 11.)

{¶ 39} The record also supports the finding of the magistrate that Cummins was "unwilling to testify if he was not sure of the evidence" he was provided. (Mar. 11, 2021 Mag.'s Decision at 7.) In his affidavit, Cummins related receiving an e-mail from a law firm questioning an incorrect "category Disbursement Amount" on a loan history payment report. Cummins stated that he raised the issue with a superior, who "refused to correct the field for the Disbursement Amount." Cummins averred that he informed his superior, as well as other Transworld officials, that he "would not make any [t]rial appearances" until the document was corrected. The affidavit also indicates Cummins believed his refusal to submit "false or incorrect documents with an affidavit or at trial," which he identified as "a

violation of the [Fair Debt Collection Practices Act] and a breach of the Consent Order," resulted in his firing by Transworld on August 2, 2018. (Cummins' Aff. at ¶ 13.) Specifically, Cummins stated he was fired for "refusing to make [t]rial appearances with an incorrect document," and because he "refused to violate the [Fair Debt Collection Practices Act] and the Consent Order." *Id.* at ¶ 14.

{¶ 40} Appellant has failed to show, based on the averments in Cummins' affidavit, that National Collegiate engaged in fraud or misrepresentation that prevented her from fully and fairly presenting a defense in the 2018 action. As noted, counsel for appellant cross-examined Cummins during the bench trial as to his knowledge of the relevant loan documents, and the Consent Order was offered by counsel as an exhibit at that time and considered by the magistrate as part of the credibility determination. Further, the same magistrate who conducted the 2018 trial also conducted the subsequent hearing on the Civ.R. 60(B) motion and concluded he would not have reached a different credibility determination had he been aware of the averments in Cummins' subsequent affidavit in the (unrelated) CFPB administrative action. As also noted, nowhere in that affidavit does Cummins reference his testimony in the instant case, nor does the affidavit contain an admission that he provided false testimony in that (or any other) trial. Upon review, we agree with the trial court's determination that the evidence adduced by appellant did not establish, by clear and convincing evidence, that the adverse party obtained a judgment through fraud, misrepresentation or misconduct so as to warrant relief under Civ.R. 60(B)(3).

{¶ 41} With respect to Civ.R. 60(B)(5), appellant does not suggest that counsel for National Collegiate acted during the 2018 trial with an intent to commit fraud in obtaining a judgment on the loan; appellant, in fact, noted in the motion to set aside judgment that she "has no reason to believe that Plaintiff's trial counsel was aware of Plaintiff and its witness' history." (Appellant's Mot. to Set Aside Jgmt. at 9.) Here, as found by the magistrate and trial court, appellant failed to demonstrate she was entitled to relief under Civ.R. 60(B)(5) for alleged fraud upon the court.

{¶ 42} Further, while we agree with the trial court that the evidence at issue was insufficient to establish that Cummins provided false testimony at the 2018 trial, appellant's claim that false testimony was presented would not, standing alone, constitute fraud upon the court. *See Hartford v. Hartford*, 53 Ohio App.2d 79, 84 (8th Dist.1977)

(noting "the majority of courts considering the question have held that a subsequent discovery that a witness committed perjury at trial is not a sufficient basis for a finding of fraud upon the court so as to justify the invocation of the court's inherent power to set aside its judgment"). *See also Roubanes* at ¶ 24.

{¶ 43} Because the record on appeal supports the trial court's determination that appellant failed to demonstrate she was entitled to relief under Civ.R. 60(B)(3) or (5), the trial court did not abuse its discretion in denying the motion to set aside judgment.

{¶ 44} Appellant also contends the trial court erred in concluding she failed to present a meritorious defense. However, having failed to demonstrate entitlement to relief under Civ.R. 60(B)(1) through (5), "we need not determine whether [appellant's] action was timely filed or whether [appellant] presents a meritorious defense to be asserted." *Caron v. Caron*, 10th Dist. No. 98AP-369 (Dec. 3, 1998). *See also Dye v. Smith*, 189 Ohio App.3d 116, 2010-Ohio-3539, ¶ 16  (4th Dist.) (because appellants "failed to establish one of the three required elements to succeed on a Civ.R. 60(B) motion, i.e., entitlement to relief under one of the grounds stated in Civ.R. 60(B)(1) through (5), we need not address the issue of whether they had a meritorious defense to present").

{¶ 45} Based on the foregoing, appellant's single assignment of error is overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.

*Judgment affirmed.*

KLATT and DORRIAN, JJ., concur.

_____